**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ZIA CHISHTI and SARAH POBERESKIN,<br><br>          Plaintiffs,<br><br>vs.<br><br>TATIANA SPOTTISWOODE, JAMES SPOTTISWOODE, NANCY ERIKA SMITH, EDWARD E. JOHNSON and MICHAEL ZWEIG,<br><br>          Defendants. | Case No. 22-CV-03490-ABJ |

<u>**MEMORANDUM OF LAW OF DEFENDANT MICHAEL P. ZWEIG IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**</u>

Dated:  March 31, 2023

John David Taliaferro (D.C. Bar. 498068)
LOEB & LOEB LLP
901 New York Ave., NW
Suite 300-E
Washington, DC  20001
Tel. (202) 618-5015
jtaliaferro@loeb.com

*Counsel for Defendant Michael P. Zweig*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

ARGUMENT ......................................................................................................5

I.      Defendant Michael P. Zweig Is Not Subject to Personal Jurisdiction in the
        District of Columbia ..................................................................................5

        A.      Legal Standard ...........................................................................6

        B.      The Alleged Harm Does Not Arise Out of Michael Zweig's Contacts
                with the District of Columbia .......................................................7

        C.      Mr. Zweig is Not Subject to Personal Jurisdiction Based on Any of the
                "Plus Factors" ...........................................................................9

        D.      Conspiracy Jurisdiction Not Alleged ...........................................10

II.     With Respect to Mr. Zweig, Plaintiffs' Complaint Fails to State a Claim Upon
        Which Relief Can Be Granted ....................................................................11

        A.      Legal Standard .........................................................................12

        B.      Order No. 3 Specifically Authorized Communications Between Ms.
                Spottiswoode and her Father .......................................................14

        C.      Protective Order No. 9 Is Limited to Confidential Materials, Not
                "Confidential Information" ..........................................................16

        D.      Chishti Has Not Adequately Pled Conspiracy, Nor Does Alleging
                Conspiracy Create an Independent Cause of Action ........................19

        E.      The Seventh Cause of Action and Fifteenth Cause of Action Fail to
                Allege any Recognizable Harm to Chishti ....................................20

                1.      Mr. Chishti Cannot Allege Harm on Behalf of The Resource
                        Group .........................................................................20

                2.      There was No Public Distribution of the Supposedly Improper
                        Transmission of Confidential Information............................21

                3.      Any Predicted Change in Outcome of the Unrelated Resource
                        Group Arbitration is Completely Conjectural........................22

III.    CONCLUSION...............................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Am. Postal Workers Union v. U.S. Postal Serv.*,
550 F.3d 27, 384 U.S. App. D.C. 27 (D.C. Cir. 2008) ............................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................................13, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........................................12, 16, 20

*Bord v. District of Columbia*,
344 F.2d 560, 120 U.S. App. D.C. 175 (D.C. Cir. 1965) ......................................................22

*Bristol-Myers Squibb Co. v. Superior Court*,
137 S. Ct. 1773 (2017)........................................................................................................6, 7

*Bronner v. Duggan*,
364 F. Supp. 3d 9 (D.D.C. 2019), *aff'd*, 2020 U.S. App. LEXIS 19214 (D.C.
Cir. June 19, 2020)................................................................................................................21

*Bryant v. Weintraub, Genshlea, Hardy, Erich & Brown*,
No. 94-35313, 1994 U.S. App. LEXIS 29199 (9th Cir. Oct. 11, 1994) ...................................8

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*,
287 F.R.D. 130 (E.D.N.Y. 2012) ...........................................................................................18

*Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials*
*Corp.*, 640 F.3d 369 (D.C. Cir. 2011) .....................................................................................7

*Crabtree v. Miller Pipeline, LLC*,
No. 1:19-cv-01596 (TNM), 2021 U.S. Dist. LEXIS 59125 (D.D.C. Mar. 29,
2021) .....................................................................................................................................17

*Crane v. New York Zoological Soc'y*,
894 F.2d 454 (D.C. Cir. 1990) ................................................................................................6

*D'Onofrio v. SFX Sports Group, Inc.*,
534 F. Supp. 2d 86 (D.D.C. 2008) ..........................................................................................6

*Delahanty v. Hinckley*,
686 F. Supp. 920 (D.D.C. 1986), *aff'd*, 900 F.2d 368 (D.C. Cir. 1990) ................................10

*Doe v. Roman Catholic Diocese of Greensburg*,
581 F. Supp. 3d 176 (D.D.C. 2022)........................................................................................13

*Doe, Inc. v. Roe*,
  No. 21-43 (BAH), 2021 U.S. Dist. LEXIS 156785 (D.D.C. June 2, 2021)
  (Howell, J.) .................................................................................................................17

*In re Domestic Airline Travel Antitrust Litig.*,
  221 F. Supp. 3d 46 (D.D.C. 2016) ...................................................................................2, 14

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621, 326 U.S. App. D.C. 67 (D.C. Cir. 1997) ..........................................13

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
  246 F. Supp. 3d 52 (D.D.C. 2017) .................................................................................7, 11

*Erwin-Simpson v. AirAsia Berhad*,
  985 F.3d 883 (D.C. Cir. 2021) ..........................................................................................6

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
  638 F. Supp. 2d 1 (D.D.C. 2009) .....................................................................................6

*FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
  529 F.3d 1087, 1094–95 (D.C. Cir. 2008) ......................................................................6

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
  983 F. Supp. 2d 22 (D.D.C. 2013) ...................................................................................10

*Groop Internet Platform Inc. v. Psychotherapy Action Network*,
  Civil Action No. 19-1854 (BAH), 2020 U.S. Dist. LEXIS 9510 (D.D.C. Jan.
  21, 2020) ...........................................................................................................................9

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Republic of Venez.*,
  784 F.3d 804, 415 U.S. App. D.C. 21 (D.C. Cir. 2015) ...........................................21

*Hensley v. United States*,
  281 F.2d 605, 108 U.S. App. D.C. 242 (D.C. Cir. 1960) .........................................15

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
  333 F.3d 156, 357 U.S. App. D.C. 35 (D.C. Cir. 2003) ...........................................12

*Howerton v. Ogletree*,
  466 F. Supp. 2d 182 (D.D.C. 2006) .................................................................................6

*Jane Does I through III v. District of Columbia*,
  238 F. Supp. 2d 212 (D.D.C. 2002) .................................................................................2

*Lans v. Adduci Mastriani & Schaumberg L.L.P.*,
  786 F. Supp. 2d 240 (D.D.C. 2011) .................................................................................10

*Lewy v. S. Poverty Law Ctr., Inc.*,
   723 F. Supp. 2d 116 (D.D.C. 2010) .......................................................................10

*Metro D.C. Paving, Highway & Constr. Materials Council v. Roubin & Janeiro, Inc.*, Civil Action No. 80-699, 1981 U.S. Dist. LEXIS 10118 (D.D.C. May 26, 1981) ..................................................................................................................20

*Milwaukee Elec. Tool Corp. v. Snap-on Inc.*,
   No. 14-CV-1296-JPS, 2016 U.S. Dist. LEXIS 59953 (E.D. Wis. Mar. 16, 2016) ..................................................................................................................19

*Nanko Shipping USA v. Alcoa, Inc.*,
   107 F. Supp. 3d 174 (D.D.C. 2015) .......................................................................13

*Reese v. Geneva Enters., Inc.*,
   Civil Action No. 96-1575 (LFO), 1997 U.S. Dist. LEXIS 5727 (D.D.C. Apr. 16, 1997) ................................................................................................................8

*Riddell v. Riddell Wash. Corp.*,
   866 F.2d 1480, 275 U.S. App. D.C. 362 (D.C. Cir. 1989) ....................................20

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
   192 F. Supp. 3d 400 (S.D.N.Y. 2016) ..............................................................18, 19

*SCE Grp., Inc. v. Garson*,
   Civil Action No. 21-cv-19944, 2022 U.S. Dist. LEXIS 132362 (D.N.J. July 26, 2022) ................................................................................................................10

*Smart v. Gillette Co. Long-Term Disability Plan*,
   70 F.3d 173 (1st Cir. 1995) ...................................................................................18

*Steinberg v. Int'l Crim. Police Org.*,
   672 F.2d 927, 217 U.S. App. D.C. 365 (D.C. Cir. 1981) .......................................9

*Streck, Inc. v. Research & Diagnostic Sys.*,
   250 F.R.D. 426 (D. Neb. 2008) .............................................................................19

*Tavoulareas v. Comnas*,
   720 F.2d 192, 232 U.S. App. D.C. 17 (D.C. Cir. 1983) ........................................10

*Walsh v. Hagee*,
   900 F. Supp. 2d 51 (D.D.C. 2012) ...........................................................................6

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
   768 F. Supp. 2d 117 (D.D.C. 2011) ..........................................................................2

*Warth v. Seldin*,
   422 U.S. 490, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) ........................................21

*Wise v. Glickman,*
    257 F. Supp. 2d 123 (D.D.C. 2003) ................................................................................2

**State Cases**

*Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,*
    749 A.2d 724 (D.C. 2000) ...........................................................................................13

*Julian Ford v. ChartOne, Inc.,*
    908 A.2d 72 (D.C. 2006) .............................................................................................15

**Statutes**

D.C. Code § 13-422 .........................................................................................................6

D.C. Code § 13-423(a) ..........................................................................................6, 7, 8, 9

D.C. Code § 29-305.52 ....................................................................................................21

**Rules**

F.R.E. 408 ........................................................................................................................22

Fed. R. Civ. P. 8(a)(2) .....................................................................................................12

Fed. R. Civ. P. 12(b)(2)................................................................................................1, 6

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 2, 11, 12

**Other Authorities**

DeMott, Deborah A., *The Lawyer as Agent,* 67 Fordham L. Rev. 301 (1998)..............................15

**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZIA CHISHTI and SARAH POBERESKIN,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>TATIANA SPOTTISWOODE, JAMES SPOTTISWOODE, NANCY ERIKA SMITH, EDWARD E. JOHNSON and MICHAEL ZWEIG,<br><br>　　　　　　　Defendants. | Case No. 22-CV-03490-ABJ |

<u>**MEMORANDUM OF LAW OF DEFENDANT MICHAEL P. ZWEIG IN SUPPORT OF HIS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**</u>

Defendant Michael P. Zweig submits this Memorandum of Law in support of his motion, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), to dismiss him as a Defendant in the above-captioned action for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted.

## <u>INTRODUCTION</u>

Plaintiffs' Pro Se Complaint ("Complaint") is an exemplar of a frivolous, indeed, malicious, filing. Devoid of any basis in fact or law, it is little more than a transparently futile exercise in public relations and image rehabilitation by a disgraced former tech company executive. It attempts to hail into court individuals who are not subject to personal jurisdiction in the District of Columbia, fails to allege key facts, ignores crucial aspects of the confidentiality framework governing the underlying arbitration, and does not come close to stating viable claims

against Defendant Michael P. Zweig.  Each of the counts involving Mr. Zweig must be dismissed.

The Complaint makes repeated but egregiously incomplete references to an underlying arbitration (the "Arbitration") involving Zia Chishti, one of the Plaintiffs in this action, his then employer (Afiniti Ltd.), and Tatiana Spottiswoode, who is also a Defendant in the instant case. *See* Complaint ¶¶ 11, 15, 112-14, 120-21, 124, 144, 233-37, 250-52.  Mr. Zweig, and the law firm at which he is a partner, Loeb & Loeb LLP, were the attorneys for Ms. Spottiswoode in that arbitration proceeding.  That Arbitration resulted in a final Arbitration Award on April 19, 2019 against Chishti and his company, Afiniti, in the amount of  $6,940,159 in compensatory damages, punitive damages, and attorneys' fees.  The award was never vacated or even challenged by the losing parties.  *See* Final Award of Arbitrator, *Tatiana Spottiswoode v. Zia Chishti and Satmap, Inc. d/b/a Afiniti*, Case No. 01-17-0007-4093 (April 19, 2019), https://docs.house.gov/meetings/JU/JU00/20221208/115220/HHRG-117-JU00-20221208-SD999.pdf  (the "Arbitration Award").[1]  Chishti's Complaint in this action attempts to conceal

---

[1] "[I]n deciding a Rule 12(b)(6) motion, a court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint,' or '**documents upon which the plaintiff's complaint necessarily relies** even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss.'"  *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 54-55 (D.D.C. 2016) (emphasis added) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)). Because the Arbitration Award is one upon which Mr. Chishti's Complaint necessarily relies, the Court may consider it here.  Moreover, the Arbitration Award was published as a Supporting Document by the House of Representatives Judiciary Committee Meeting and can be accessed in that Committee's Repository.  *See* https://docs.house.gov/Committee/Calendar/ByEvent.aspx?EventID=115220.  The Court is "allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies." *Wise v. Glickman*, 257 F. Supp. 2d 123, 129 n.5 (D.D.C. 2003) (quoting *Jane Does I through III v. District of Columbia*, 238 F. Supp. 2d 212, 216 (D.D.C. 2002)).

the true extent of his adjudicated and unlawful misconduct, and blithely ignores the extent to

which Plaintiffs' assertions in the Complaint were considered, and rejected, in the Arbitration.

Specifically, as was set forth in the Arbitration Award:

> Mr. Chishti's overall unrelenting course of sexual advances [against Ms.
> Spottiswoode] was pervasive, permeating the entire relationship he had with Ms.
> Spottiswoode throughout her tenure at Afiniti.  Nearly every time he met or
> expected to meet with Ms. Spottiswoode, he made sexual overtures.  Determined
> to assert power and dominion over her, he simply would not accept no for an
> answer.
>
> …
>
> I found the sexual conduct in Brazil, culminating in the beating, to be unwelcome
> and not consensual, and find the protestations that [Chishti] reasonably believed it
> to be consensual not credible.  As discussed in connection with the assault and
> battery and intentional distress claims, Mr. Chishti intended to injure Ms.
> Spottiswoode and acted with a willful and knowing disregard for her rights and
> safety.  At no time has Mr. Chishti expressed remorse, concern for the Claimant,
> or an acknowledgement that this form of behavior would not be repeated.

Arbitration Award at 14-15, 22.  Intertwined with these factual determinations are repeated

findings that Mr. Chishti has only the loosest affiliation with veracity and truth-telling.  As the

arbitrator determined in the Arbitration Award:

- "I found that the testimony offered by Mr. Chishti was often tailored to meet the needs of his defense and divorced from reality."  *Id*. at 2.

- "It was my impression that Mr. Chishti often created such alternative narratives, and may have come to believe them."  *Id*. at 3.

- "These are only a few of numerous examples leading me to find that he was less than truthful on big matters, small matters, and facts that did not fit his narrative."  *Id*.

Plaintiffs would like to pretend that the Arbitration Award does not exist.  They would

like to ignore that Mr. Chishti and his former employer forced Tatiana Spottiswoode into an

arbitration, did everything within their power to silence and intimidate Ms. Spottiswoode, and

nevertheless were found liable to Ms. Spottiswoode for millions of dollars in damages.  What

they cannot be permitted to do, however, is to re-litigate issues from the Arbitration in a futile effort to rehabilitate Mr. Chishti's deservedly disgraced public image.

Mr. Zweig is named in only two of the claims in the 179-page Complaint, and the allegations against him are made exclusively on "information and belief."  First, the Complaint asserts that, "on information and belief," Mr. Zweig and Ms. Spottiswoode breached their confidentiality obligations by conveying confidential information about the Arbitration to Ms. Spottiswoode's father, James Spottiswoode.  Complaint ¶¶ 249-56 ("Seventh Cause of Action"). Second, the Complaint alleges that, "on information and belief," in the summer of 2020, Mr. Zweig engaged in a conspiracy with the other Defendants to breach the confidentiality obligations contained in the protective order issued in the Arbitration.  *Id*. ¶¶ 313-25  ("Fifteenth Cause of Action").  These few specific allegations made against Mr. Zweig are deficient on nearly every element required to allege breach of contract or conspiracy, for a variety of reasons. The claims cannot give rise to liability even if they were true – and they are not.

1.      The Complaint asserts that information shared with Ms. Spottiswoode's father was a breach of the confidentiality framework of the Arbitration.  This assertion is false, because the arbitrator specifically authorized communications with Mr. Spottiswoode concerning the Arbitration.  Ms. Spottiswoode, then 24 years old and just out of college, needed to be able to confer with her father and seek his guidance, and also feared retaliation from Mr. Chishti simply for "pursuing her claims."  She accordingly sought an order from the Arbitrator seeking to allow her to discuss the Arbitration with her father.  *See* Arbitration Order No. 3 ("Order No. 3"), Declaration of Michael P. Zweig ("Zweig Decl."), Ex. A.  The Arbitrator ruled "that Ms. Spottiswoode may speak with her father and other immediate family members about anything related to this case."  *Id.* at 2.  Ms. Spottiswoode's apprehension about retribution from Mr.

Chishti was well-founded, for on the eve of her deposition in the arbitration proceeding, her father was sued in a separate arbitration filed by The Resource Group ("TRG"), a Chishti-affiliated company.  *See* Complaint ¶¶ 13-14.  To the extent that the Complaint alleges that Mr. Zweig spoke directly with Mr. Spottiswoode, *id.* ¶ 255, Mr. Zweig's communications in his capacity as Ms. Spottiswoode's agent would likewise have been specifically authorized.

2.     Arbitration Order No. 9 ("Protective Order No. 9"), attached to the Complaint as Exhibit E, defines "Confidential Material" as "materials" produced or generated in the Arbitration, and then proceeds to define those materials exclusively in terms of tangible things like discovery requests and responses, pleadings, motions, briefs, testimony, transcripts, correspondence, orders, and the award.  Order No. 9 does not restrict "Confidential Information," and does not, for example, restrict disclosure of the existence of the Arbitration, that it had concluded, or that it resulted in an award to one of the parties.  *Contra* Complaint ¶ 252.

Nevertheless, whether for purposes of distraction or vengeance, Mr. Chishti chose to name Mr. Zweig as a Defendant in this suit, on the barest of allegations, none of which state facts with respect to Mr. Zweig that plausibly amount to either breach of the confidentiality guidelines of the Arbitration or conspiracy to breach the confidentiality of the Arbitration.

## ARGUMENT

## I.     Defendant Michael P. Zweig Is Not Subject to Personal Jurisdiction in the District of Columbia

Plaintiffs have not demonstrated that this Court has personal jurisdiction over Mr. Zweig. As the Complaint itself admits, Mr. Zweig, a natural person, is a resident of the State of New York.  Complaint ¶ 32.d.  He is therefore not subject to D.C.'s general jurisdiction statute, which requires that a defendant be "domiciled in, organized under the laws of, or maintaining his or its

principal place of business in, the District of Columbia." D.C. Code § 13-422. And as discussed

below, he is also not subject to jurisdiction pursuant to D.C.'s long-arm statute.

### A.      Legal Standard

On a motion to dismiss under Rule 12(b)(2), a plaintiff bears the burden of establishing

the court's personal jurisdiction over a defendant, *Crane v. New York Zoological Soc'y*, 894 F.2d

454, 456 (D.C. Cir. 1990), and it "cannot rely on conclusory allegations." *Exponential*

*Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 6 (D.D.C. 2009) (quoting

*D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 89 (D.D.C. 2008)). In deciding

whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the

court resolves factual discrepancies in favor of the plaintiff. *Crane*, 894 F.2d at 456. While the

court construes pro se complaints liberally, *Howerton v. Ogletree*, 466 F. Supp. 2d 182, 183

(D.D.C. 2006), pro se plaintiffs (even wealthy ones) are not exempt from "plead[ing] adequate

jurisdictional facts for their claims." *Walsh v. Hagee*, 900 F. Supp. 2d 51, 56 (D.D.C. 2012)

(citation omitted).

When a defendant is neither domiciled nor "at home" within the forum, courts have

personal jurisdiction only if the suit arises out of or relates to the defendant's contacts with the

forum. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1779–80 (2017). "A

plaintiff seeking to establish specific jurisdiction over a non-resident defendant must establish

that specific jurisdiction comports with the forum's long-arm statute, D.C. Code § 13–423(a),

and does not violate due process." *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1094–95

(D.C. Cir. 2008) (citation omitted), *overruled on other grounds by Erwin-Simpson v. AirAsia*

*Berhad*, 985 F.3d 883 (D.C. Cir. 2021). As relevant here, the District of Columbia's long-arm

statute provides that a District of Columbia court may exercise personal jurisdiction over a

person "as to a claim for relief arising from the person's" (1) "transacting any business in the District of Columbia"; (2) "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia"; or (3) "causing tortious injury in the District of Columbia by an act or omission outside of the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a).

"[C]onspiracy jurisdiction . . . cannot exist unless the [complaint] actually states a plausible claim of civil conspiracy," and a plaintiff must "'plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy' in order to establish conspiracy jurisdiction over a defendant." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 90 (D.D.C. 2017) (quoting *Companhia Brasileira Carbureto de Calicio v. Applied Industrial Materials Corp.*, 640 F.3d 369, 372 (D.C. Cir. 2011)), *aff'd*, 894 F.3d 339 (D.C. Cir. 2018).  "This particularity requirement is strictly enforced," and courts in this Circuit "have appl[ied] the test for co-conspirator jurisdiction warily in order to prevent a broad extension of long-arm jurisdiction."  *Id.* (internal quotation marks and citations omitted).

## B.      The Alleged Harm Does Not Arise Out of Michael Zweig's Contacts with the District of Columbia

Because Mr. Zweig is not subject to general personal jurisdiction in the District of Columbia, jurisdiction exists only if the Complaint arises out of or relates to the Defendant's contacts with the forum.  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.  Under the District of Columbia's long-arm statute, the Complaint must allege a claim arising from one of the following: (1) Mr. Zweig transacting business in the District of Columbia; (2) an action or omission done by Mr. Zweig in the District of Columbia that caused tortious injury in the

District of Columbia; or (3) a tortious act or omission outside of the District of Columbia that caused an injury in the District of Columbia, but only if Mr. Zweig "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a).  The D.C. long-arm statute "distinguishes sharply between the act or omission which causes the injury and the injury itself."  *Reese v. Geneva Enters., Inc.*, Civil Action No. 96-1575 (LFO), 1997 U.S. Dist. LEXIS 5727, at *18 (D.D.C. Apr. 16, 1997) (citation omitted).

Here the Complaint utterly fails to allege any injury-causing action by Mr. Zweig that took place in the District of Columbia.  As the Complaint admits, Mr. Zweig is a resident of New York, not the District of Columbia.  Complaint ¶ 32.d.  Mr. Zweig's office is in Loeb & Loeb's New York office.  *See* Zweig Decl. ¶ 6.  The Complaint alleges only that Mr. Zweig transmitted "confidential information" to Mr. Spottiswoode sometime "[a]fter the conclusion of [Ms. Spottiswoode's] arbitration," Complaint ¶ 120, and that this alleged breach purportedly precluded a fair and rapid adjudication or settlement of Mr. Spottiswoode's separate arbitration against TRG, which caused harm to TRG, of which Mr. Chishti "was a substantial shareholder."[2] None of these actions, to the extent they took place at all, took place in the District of Columbia:

- The final hearing date of Ms. Spottiswoode's Arbitration was in February 2019, and following the conclusion of the Arbitration, Mr. Zweig returned to his home and office in New York.[3]  Zweig Decl. ¶¶ 7-8.  The Complaint does not allege that Mr. Zweig has ever returned to the District of Columbia since the conclusion of the

---

[2] Mr. Chishti has not filed a derivative claim on behalf of The Resource Group.

[3] Mr. Zweig's limited time in the District of Columbia attending the Arbitration cannot serve as the basis for personal jurisdiction.  His physical attendance at the hearing is not a predicate for the allegations in this case, which allege conduct that occurred "after" the conclusion of the Arbitration, *see* Complaint ¶ 120, and his attendance did not by itself establish any persistent course of conduct.  *Bryant v. Weintraub, Genshlea, Hardy, Erich & Brown*, No. 94-35313, 1994 U.S. App. LEXIS 29199, at *2, 6 (9th Cir. Oct. 11, 1994) (appearing in court in Oregon for client does not create personal jurisdiction when alleged injuries arise out of conduct in another state).

Arbitration, and he has not.  Zweig Decl. ¶ 9.  Rather, the Complaint alleges that the supposed breach of confidentiality took place "[a]fter the conclusion of [Ms. Spottiswoode's] arbitration," Complaint ¶ 120, when Mr. Zweig was in New York. Zweig Decl. ¶¶ 8-9.

- The alleged injury was a "precluded" adjudication of TRG's separate arbitration against Mr. Spottiswoode.  TRG is a Pakistani Company, Complaint ¶ 31.a, and has a subsidiary organized under the laws of Bermuda; Mr. Spottiswoode is a resident of California, *id*. ¶ 32.b., and TRG's arbitration against Mr. Spottiswoode was seated in California.

**C.      Mr. Zweig is Not Subject to Personal Jurisdiction Based on Any of the "Plus Factors"**

The Complaint does not allege that either Mr. Zweig's alleged actions, or the harm supposedly created by Mr. Zweig's actions, took place in the District of Columbia.  The only other conceivable way for the District of Columbia to exercise jurisdiction over Mr. Zweig is if he caused harm in the District of Columbia and he "regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a).  These so-called "plus factors aid in weeding out cases in which the in-District injury 'is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum.'" *Groop Internet Platform Inc. v. Psychotherapy Action Network*, Civil Action No. 19-1854 (BAH), 2020 U.S. Dist. LEXIS 9510, at *12 (D.D.C. Jan. 21, 2020) (quoting *Steinberg v. Int'l Crim. Police Org.*, 672 F.2d 927, 931, 217 U.S. App. D.C. 365 (D.C. Cir. 1981) (Ginsburg, J.).

Here, there is no set of facts that *could* be alleged, much less that is *actually* alleged in the Complaint, that would activate the "plus factors" and subject Mr. Zweig to personal jurisdiction. Plaintiffs do not allege that Mr. Zweig regularly performed or solicited business in the District of

Columbia.[4]  *See* Zweig Decl. ¶ 11.  He is not admitted to the bar of the District of Columbia.  *See* Zweig Decl. ¶ 5.  Nor do Plaintiffs allege that Mr. Zweig engaged in a persistent course of conduct in the District of Columbia.  For example, placing telephone calls into the District is insufficient to establish a "persistent course of conduct," regardless of the nature or frequency of the calls.  *Tavoulareas v. Comnas*, 720 F.2d 192, 194, 232 U.S. App. D.C. 17 (D.C. Cir. 1983).  While Plaintiffs do not allege that Mr. Zweig has travelled to the District of Columbia since the completion of the Arbitration Hearing in February 2019, Zweig Decl. ¶ 9, even occasional travel to the District of Columbia is insufficient to establish a persistent course of conduct.  *Lewy v. S. Poverty Law Ctr., Inc.*, 723 F. Supp. 2d 116, 124 (D.D.C. 2010) (citations omitted).  Nor does Mr. Zweig derive substantial revenue from the District of Columbia, Zweig Decl. ¶ 11, which courts have defined as "enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be hauled into court there."  *Delahanty v. Hinckley*, 686 F. Supp. 920, 925 (D.D.C. 1986), *aff'd*, 900 F.2d 368 (D.C. Cir. 1990).

### D.    Conspiracy Jurisdiction Not Alleged

The Complaint does not allege conspiracy jurisdiction over Mr. Zweig, but even if it had, the Complaint would be inadequate to support a conspiracy jurisdiction finding.  Under well-

---

[4] Mr. Zweig's partnership in a law firm that has an office in the District of Columbia does not create personal jurisdiction over Mr. Zweig personally.  *Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 282 (D.D.C. 2011) (evaluating a partnership's contacts with the District of Columbia but noting that personal jurisdiction over each individual partner must be "based on each defendant's independent contacts with the forum"); *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 35 (D.D.C. 2013) (concluding that acts of certain members of a purported joint venture could not be imputed to any other members for purposes of establishing personal jurisdiction); *SCE Grp., Inc. v. Garson*, Civil Action No. 21-cv-19944, 2022 U.S. Dist. LEXIS 132362, at *14 (D.N.J. July 26, 2022) (citations omitted) ("The majority of courts to address this issue have declined to exercise specific jurisdiction where, as here, Defendants did not actively seek to conduct legal business in the forum state.").

understood conspiracy pleading requirements, complaints must plead the conspiracy with particularity as well as "overt acts within" the District of Columbia. *EIG Energy Fund XIV, L.P.,* 246 F. Supp. 3d at 90. The acts alleged to have been taken in furtherance of the supposed conspiracy are not alleged to have taken place in the District of Columbia, and the acts are alleged only in the most general of terms.[5] *See* Complaint ¶¶ 313-325. The Complaint thus fails to plead co-conspirator jurisdiction with the particularity necessary to "prevent a broad extension of long-arm jurisdiction." *EIG Energy Fund XIV, L.P.,* 246 F. Supp. 3d at 90 (citation omitted).

Mr. Zweig is not subject to personal jurisdiction in the District of Columbia, and he should be dismissed from this case on that basis.

## II.    With Respect to Mr. Zweig, Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can Be Granted

Even if personal jurisdiction were established here, which it is not, and even if all allegations in the Complaint are taken to be true, which they must be for purposes of evaluating a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P 12(b)(6), the claims against Mr. Zweig must still be dismissed for four separate and independent reasons:

First, the Arbitrator explicitly issued an order permitting Ms. Spottiswoode to discuss the Arbitration with her father.

Second, Protective Order No. 9 upon which Mr. Chishti relies does not even mention, much less restrict, the distribution of what the Complaint describes as "confidential

---

[5] To the extent the overt act in furtherance of the alleged conspiracy was the purported communication of certain limited facts regarding the Arbitration, that communication was alleged to have taken place when Mr. Zweig was in the State of New York. *See* n.4, *supra*; Zweig Decl. ¶¶ 8-9.

information."[6]  Instead, it places certain controls on "confidential materials," which it defines

exclusively in terms of tangible things like discovery requests and responses, pleadings, motions,

briefs, testimony, transcripts, correspondence, orders, and the award.  *See* Order No. 9,

Complaint, Ex. E.  Even assuming that Mr. Zweig had communicated the existence of the

Arbitration, that it had concluded, or that it resulted in an award to one of the parties, Complaint

¶ 252, that would be insufficient to create a cause of action upon which relief could be granted.

Third, the Conspiracy Cause of Action is inadequately pled, and also fails to state a claim

upon which relief could be granted.

Fourth, the Complaint does not allege any recognizable harm to Plaintiffs.

A.    **Legal Standard**

Ordinarily, "[a] pleading that states a claim for relief must contain . . . a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court

must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of

all inferences that can be derived from the facts alleged."  *Holy Land Found. for Relief & Dev. v.*

*Ashcroft*, 333 F.3d 156, 165, 357 U.S. App. D.C. 35 (D.C. Cir. 2003) (internal quotation and

citation omitted).  Although the court accepts all well pleaded facts in the complaint as true,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (citation

omitted).  "While a complaint . . . does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

---

[6] The Complaint uses the term "confidential information" more than 20 times and does not ever –
not one time – use the term actually covered by the Protective Order: "confidential materials."

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation marks and citations omitted).  The claim to relief must be "plausible on its face," enough to "nudge[ ] [the] claims across the line from conceivable to plausible." *Id*. at 570. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citation omitted).  The court may also consider "any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624, 326 U.S. App. D.C. 67 (D.C. Cir. 1997) (citation omitted).

As it relates to civil conspiracy specifically, the elements of civil conspiracy are "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one to the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." *Doe v. Roman Catholic Diocese of Greensburg*, 581 F. Supp. 3d 176, 211 (D.D.C. 2022) (citation omitted).  There is no independent action in the District of Columbia for civil conspiracy, *id*.; instead it is only "a means for establishing vicarious liability for the underlying tort." *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000) (internal quotation marks and citation omitted).  "If the underlying tort claim fails, a conspiracy claim based on such a tort also fails." *Nanko Shipping USA v. Alcoa, Inc.,* 107 F. Supp. 3d 174, 183 (D.D.C. 2015) (citing *Halberstam v. Welch*, 705 F.2d 472, 479, 227 U.S. App. D.C. 167 (D.C. Cir. 1983).

B.      **Order No. 3 Specifically Authorized Communications Between Ms.**

         **Spottiswoode and her Father**

Ms. Spottiswoode feared draconian penalties from Mr. Chishti and her former employer.

She feared that Mr. Chishti would weaponize the confidentiality provisions in her employment

agreement, and would prohibit her from seeking even the most basic necessities of human

interaction with regard the trauma she had undergone.  Because of the risk that Mr. Chishti

would exploit Ms. Spottiswoode's employment agreement and would attempt to unduly restrict

her communications with her father, Ms. Spottiswoode sought relief from the Arbitrator to

clarify her responsibilities and obligations during the pendency of the Arbitration.  As reflected

in the eventual order from the Arbitrator, Ms. Spottiswoode feared "legal liability for pursuing

her claims."  Order No. 3, Zweig Decl., Ex. A at 1).[7]  The Arbitrator acknowledged these fears,

and concluded that the non-disparagement and non-disclosure provisions contained in Ms.

Spottiswoode's employment documents, and Mr. Chishti's threatened enforcement of those

provisions, were "unconscionable"  *Id*.

Ms. Spottiswoode feared that Mr. Chishti's vindictive nature might even extend to

conversations with one of her closest confidants – her own father.  She sought the explicit right

to discuss the Arbitration with her father, and the Arbitrator granted that request.  In Order No. 3,

the Arbitrator ruled that "Ms. Spottiswoode may speak with her father and other immediate

family members **about anything related to this case**."  *Id*. at 2 (emphasis added).  Importantly,

---

[7] Order No. 3 is expressly referenced in Paragraph 4(j) of Protective Order No. 9 (permitting
   disclosure to "Any other person to whom . . . the Arbitrator in writing permit[s] disclosure")
   and by extension thus incorporated into the Complaint itself.  Moreover, as a key
   confidentiality order in the Arbitration, it is a document upon which the Plaintiffs' Complaint
   necessarily relies.  *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d at 54-55.

Order No. 3 did not place any consequent restrictions on what Mr. Spottiswoode did with information he received from Ms. Spottiswoode.  All allegations that communications between Ms. Spottiswoode and her father somehow breached a confidentiality obligation can therefore be dismissed out of hand.

The Complaint alleges that Mr. Zweig – Ms. Spottiswoode's attorney – spoke with Mr. Spottiswoode's attorney about the existence of the Arbitration Award.  But if Ms. Spottiswoode was free to discuss any aspect of the arbitration with her father, then it follows that Mr. Zweig, as Ms. Spottiswoode's attorney and agent, would also have been permitted to do so, if he so chose.  Mr. Zweig's actions regarding the Arbitration were at all times in his capacity as counsel to Ms. Spottiswoode, and as a result, any alleged communications with Mr. Spottiswoode and his attorney, even had they taken place, as alleged on information and belief in the Complaint, would have been in his capacity as Ms. Spottiswoode's agent.  *Julian Ford v. ChartOne, Inc.*, 908 A.2d 72, 82 (D.C. 2006) (citation omitted) ("In general, the relation of attorney and client is one of agency and the general rules of law applicable to agencies apply."; *Hensley v. United States*, 281 F.2d 605, 607, 108 U.S. App. D.C. 242 (D.C. Cir. 1960); DeMott, Deborah A., *The Lawyer as Agent,* 67 Fordham L. Rev. 301 (1998) ("[T]he lawyer-client relationship is a commonsensical illustration of agency.").  Under those same commonly understood principles of agency, "the authorized acts of an attorney on behalf of a client are imputed to the client."  *ChartOne, Inc.*, 908 A.2d at 82.  Ms. Spottiswoode was explicitly permitted to discuss the Arbitration with her father.  By basic principles of agency, that right extended to Ms. Spottiswoode's counsel and Mr. Spottiswoode's counsel, and any communications within that group.

Perhaps as importantly, Order No. 3 did not place any limitation on Mr. Spottiswoode. He was not himself bound by Order No. 3, and he did not agree to any restriction on further

distribution of information once he received it from Ms. Spottiswoode.  To the extent Mr.

Spottiswoode is alleged to have made any use of the information he received from Mr. Zweig,

that is permitted under Order No. 3.

In any event, in light of Order No. 3, the allegations against Mr. Zweig fail to meet the

"plausible" standard of *Iqbal* and *Twombly*.  Even if the Order did not cover Ms. Spottiswoode's

agent, there would have been no plausible reason for Mr. Zweig to need to communicate any

information regarding the Arbitration to Mr. Spottiswoode, because Mr. Spottiswoode was

already entitled to learn about "**anything related to**" the Arbitration directly from his daughter.

There was likewise no plausible reason for Mr. Zweig to need to communicate any information

regarding the Arbitration to Mr. Spottiswoode's attorney, because Mr. Spottiswoode could

simply do so himself once he received that information from his daughter.  *Twombly*, 550 U.S. at

570.  The Complaint is completely silent as to whether such information was provided by Ms.

Spottiswoode herself.  To the extent it was, or could have been, it is simply not plausible to

believe that Mr. Zweig would have gone out of his way to breach an alleged confidentiality

obligation when his client was completely within her rights to do the same thing without any

violation at all.

Order No. 3 of the Arbitrator provides sufficient basis by itself to dismiss all claims

against Mr. Zweig.

## C.     Protective Order No. 9 Is Limited to Confidential Materials, Not "Confidential Information"

The Complaint makes repeated reference to the disclosure of supposed "confidential

information."  *See, e.g.*, Complaint ¶ 120 ("Mr. Zweig[] transmitted confidential information

from the arbitration to Mr. Spottiswoode in conjunction with his attorney Mr. Johnson."); *id.*

¶ 251 ("Ms. Spottiswoode and Mr. Zweig revealed confidential information related to her arbitration, in violation of the protective order.").  The Complaint specifically alleges that Ms. Spottiswoode and Mr. Zweig told James Spottiswoode and his attorney, Edward E. Johnson, the following:

> a. That the arbitration with Ms. Spottiswoode had concluded,  b. That it had resulted in an award to one of the parties.  c. Of the details of that award and the decision supporting it.

Complaint ¶ 252.

Of course, such disclosure was expressly permitted by Order No. 3, but even if it had not been, it would not have violated Protective Order No. 9.  That is because Protective Order No. 9 does not restrict the disclosure of "confidential information."  Instead, it restricts only the disclosure of "Confidential Materials," which Order No. 9 expressly defines as "materials produced or generated in this Arbitration," and then proceeds to define those materials exclusively in terms of tangible things like "discovery requests and responses, pleadings, motions, briefs, testimony, transcripts, correspondence, orders, and the award."  Complaint, Ex. E.  Mr. Chishti and his former employer did not obtain a protective order from the Arbitrator that restricted, for example, disclosure of the existence of the Arbitration itself, that it had concluded, and that it had resulted in an award to one party.[8]  *Contra* Complaint ¶ 252.  The limitation of confidential materials to tangible documents is an expression not only of what Protective Order No. 9 covers, but also what it does not cover.  *See Crabtree v. Miller Pipeline, LLC*, No. 1:19-cv-01596 (TNM), 2021 U.S. Dist. LEXIS 59125, at *15 (D.D.C. Mar. 29, 2021); *see also Am.*

---

[8] "Even if some information disclosed during the arbitration may, on some independent basis, be subject to sealing, that does not support secrecy regarding the existence of the arbitration itself."  *Doe, Inc. v. Roe*, No. 21-43 (BAH), 2021 U.S. Dist. LEXIS 156785, at *9 (D.D.C. June 2, 2021) (Howell, J.).

*Postal Workers Union v. U.S. Postal Serv.*, 550 F.3d 27, 30-31, 384 U.S. App. D.C. 27 (D.C. Cir. 2008) (approving an arbitrator's application of *expressio unius* in interpreting an arbitration award, which the court considered to be "like the interpretation of a contract"); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995) ("when parties list specific items in a document, any item not so listed is typically thought to be excluded." (citation omitted)).  Despite Mr. Chishti's repeated attempts to claim otherwise, Order No. 9 restricts materials, not information.

Courts are reluctant to extend protective orders past their explicit terms, particularly when sharing information "is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) (citation omitted).  In fact, the abuse of protective orders as typified by Mr. Chishti in the Complaint – to silo off critics and prevent information-sharing that produces truth – are precisely the sort of abuses that courts are concerned about.  *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 192 F. Supp. 3d 400, 402 (S.D.N.Y. 2016) (rejecting extension of protective order when counsel "alluded" to facts, counsel "revealed" that he knew a party was capable of performing a certain calculation, and counsel "reminded" a party that documents had been produced in another litigation).

Just as in *Royal Park*, the primary impact of the way Mr. Chishti has attempted to invoke Protective Order No. 9 would be to "hamper [a party's] ability to obtain discovery to which they are entitled." *Id.* at 403.  Courts, for good reason, do not like this sort of gamesmanship, which is why courts almost always distinguish between "the use of knowledge regarding the existence of certain documents versus the use of the confidential content within the documents."

*Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, No. 14-CV-1296-JPS, 2016 U.S. Dist. LEXIS

59953, at *14 (E.D. Wis. Mar. 16, 2016).[9]  Mr. Chishti's interpretation of Order No. 9 "makes

little sense except as a potential tool to prevent opposing counsel from cooperating with one

another to advocate effectively for their clients."  *Royal Park Invs.*, 192 F. Supp. 3d at 406

(citation omitted).  This Court should reject Mr. Chishti's abusive attempt to enforce Protective

Order No. 9.

**D.     Chishti Has Not Adequately Pled Conspiracy, Nor Does Alleging Conspiracy Create an Independent Cause of Action**

The Fifteenth Cause of Action alleges that Tatiana Spottiswoode, James Spottiswoode,

James Spottiswoode's attorney Edward E. Johnson, and Michael Zweig "conspired" to breach

the Arbitration Protective Order, and to "interfere with" Chishti's business relationships.[10]  *See*

Complaint ¶¶ 313-325.  The Fifteenth Cause of Action fails to state a claim against Mr. Zweig

for multiple reasons, any one of which would be sufficient to dismiss it.  First and foremost, it

fails because there is no underlying unlawful act.  Pursuant to Order No. 3, Ms. Spottiswoode

was permitted to share information about the Arbitration with her father, and by extension, her

counsel (Mr. Zweig) was permitted to share information about the Arbitration with Mr.

Spottiswoode's counsel.  Second, there is no independent cause of action in the District of

---

[9] This is true even when the protective order is more restrictive than the one that governed the Arbitration here.  For example, in *Streck, Inc. v. Research & Diagnostic Sys.*, 250 F.R.D. 426, 434 (D. Neb. 2008), the protective order governed "Confidential Information" and limited its use to "the above captioned litigation [in which the protective order had been entered]."  The court found that reference to confidential information in another proceeding was "not relying on the materials themselves, but attempting to secure their disclosure in [another] proceeding."  *Id.* at 435.

[10] The Fourteenth Cause of Action alleges a conspiracy with respect to Ms. Spottiswoode's testimony to Congress.  *See* Complaint ¶¶ 306-311.  Mr. Zweig is not named in this cause of action and his name does not appear in the corresponding paragraphs of the Complaint.

Columbia for civil conspiracy.  Rather, civil conspiracy in the District of Columbia exists as a legal "device through which vicarious liability for the underlying wrong may be imposed upon all who are a party to [the conspiracy]."  *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1493, 275 U.S. App. D.C. 362 (D.C. Cir. 1989).  As previously explained, the communications among and between Ms. Spottiswoode, Mr. Spottiswoode, and their respective counsels was expressly permitted by the Arbitrator in Order No. 3, and as a result, there is no underlying wrong for which the Defendants named in the Fifteenth Cause of Action could have conspired.

Third, the District of Columbia has never recognized, and does not recognize, a cause of action for conspiracy to breach a contract.  *Metro D.C. Paving, Highway & Constr. Materials Council v. Roubin & Janeiro, Inc.*, Civil Action No. 80-699, 1981 U.S. Dist. LEXIS 10118, at *7 (D.D.C. May 26, 1981) (no identifiable cases recognizing conspiracy to breach contract).

## E.    The Seventh Cause of Action and Fifteenth Cause of Action Fail to Allege any Recognizable Harm to Chishti

In addition to utterly failing to plead causes of action that are plausible on their face, *Twombly*, 550 U.S. at 570, the Seventh Cause of Action and Fifteenth Cause of Action utterly fail to recite plausible *harm* that was suffered by Mr. Chishti.

### 1.    Mr. Chishti Cannot Allege Harm on Behalf of The Resource Group

Both the Seventh Cause of Action and the Fifteenth Cause of Action allege that the supposed breach of the Protective Order No. 9 affected TRG's separate arbitration against Mr. Spottiswoode.  *See* Complaint ¶¶ 253; 319-322.  However, Mr. Chishti has no standing to assert a claim on behalf of The Resource Group.  He alleges that the supposed breach and related conspiracy "resulted in Mr. Spottiswoode settling his arbitration with The Resource Group with The Resource Group paying him substantial amounts of money," *id.* ¶ 321, and that Chishti was

"directly financially harmed" "[a]s the largest individual shareholder of The Resource Group."
*Id.* ¶ 322.   Under well-understood D.C. law, a shareholder may not collect damages for injuries
allegedly incurred by a corporation without bringing a derivative action.   *Bronner v. Duggan*,
364 F. Supp. 3d 9, 18 (D.D.C. 2019), *aff'd*, 2020 U.S. App. LEXIS 19214 (D.C. Cir. June 19,
2020)  Such a prohibition is rooted in the well-established rule that "plaintiffs must demonstrate
Article III standing by asserting their 'own legal rights and interests' rather than resting 'claim[s]
to relief on the legal rights or interests of third parties.'"   *Helmerich & Payne Int'l Drilling Co. v.*
*Bolivarian Republic of Venez.*, 784 F.3d 804, 814, 415 U.S. App. D.C. 21 (D.C. Cir. 2015)
(quoting *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)).  The only
exception is for a derivative action, which requires a number of procedural prerequisites, none of
which have been performed by Chishti, much less pled in the Complaint.  D.C. Code § 29-
305.52 (requiring that a demand be made to corporation at least 90 days before commencing any
derivative action).  The Seventh and Fifteenth Cause of Action can be dismissed for this
additional basis as well.

### 2.      There was No Public Distribution of the Supposedly Improper Transmission of Confidential Information

The Seventh and Fifteenth Cause of Action claim some sort of generalized financial
harm, reputational harm, and psychological harm from Ms. Spottiswoode's disclosure to her
father of confidential information from the Arbitration.  Complaint ¶¶ 254, 323.  Of course, there
can be no conspiracy to do what Order No. 3 expressly permitted Ms. Spottiswoode to do.  The
claim for financial harm, reputational harm, and psychological harm, insofar as it relates to the
Fifteenth Cause of Action, fails for the additional reason that the disclosure to Mr. Spottiswoode
was then allegedly used only in a second arbitration between Mr. Spottiswoode and The

Resource Group – but that arbitration was also confidential.  There was no public disclosure of the information supposedly transmitted from Ms. Spottiswoode to Mr. Spottiswoode.

### 3.     Any Predicted Change in Outcome of the Unrelated Resource Group Arbitration is Completely Conjectural

A moment's consideration demonstrates the complete paucity of harm actually alleged in the Seventh and Fifteenth Cause of Action.  First, the Seventh and Fifteenth Cause of Action fail to allege that Afiniti actually turned over any requested documents in response to the subpoena from Mr. Spottiswoode's attorney.  *See* Complaint ¶ 317 ("Mr. Spottiswoode and Mr. Johnson then proceeded to move their arbitrator to ***attempt*** to subpoena further information from Ms. Spottiswoode's arbitration") (emphasis added).  Given Mr. Chishti's obstreperous approach to litigation, it is far more plausible that Afiniti simply refused to turn over the requested information.  The Complaint certainly does not allege that Afiniti did, in fact, turn over the subpoenaed information.

Second, the Complaint utterly fails to explain how the "outcome" of the separate arbitration against The Resource Group was affected by the purported breach of the Protective Order in the arbitration between Ms. Spottiswoode and Afiniti.  Chishti certainly ***asserts*** that The Resource Group was harmed by Mr. Spottiswoode gaining information about Mr. Chishti's unrelenting course of sexual advances, Arbitration Award at 14, but does not allege with any plausibility that the settlement of The Resource Group arbitration would have been materially different in a hypothetically different non-breach world.  *Bord v. District of Columbia*, 344 F.2d 560, 563 n.8, 120 U.S. App. D.C. 175 (D.C. Cir. 1965) ("no inference as to the merit of [Plaintiff's claims] could be drawn from the settlement agreement.").  *See also* F.R.E. 408.  Similarly, the Complaint asserts that Mr. Spottiswoode was able to "leverage" the information he

gained, Complaint ¶ 281, but does not explain why The Resource Group would even care about

Mr. Chishti's conduct in his role as CEO of an entirely different company – Affiniti.  There is

simply no proximate cause between the supposed "leak" and The Resource Group's settlement

of Mr. Spottiswoode's arbitration.

## III.   CONCLUSION

For all of the foregoing reasons, the Seventh Cause of Action and Fifteenth Cause of

Action against Mr. Zweig must be dismissed.


Dated:  March 31, 2023                    /s/ John David Taliaferro
                                          John David Taliaferro (D.C. Bar. 498068)
                                          LOEB & LOEB LLP
                                          901 New York Ave., NW
                                          Suite 300-E
                                          Washington, DC  20001
                                          Tel. (202) 618-5015
                                          jtaliaferro@loeb.com

                                          *Counsel for Defendant Michael P. Zweig*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Appearance of Counsel was filed via ECF and served via U.S.

Mail postage prepaid on:

      SARAH POBERESKIN
      100 Paseo de Colon
      Suite 9024186
      San Juan, PR 00901
      *Pro se Plaintiff*

      -and

      ZIA CHISHTI
      100 Paseo de Colon
      Suite 9024186
      San Juan, PR 00901
      *Pro se Plaintiff*

                      /s/ John David Taliaferro
                      John David Taliaferro