**UNITED STATES DISTRICE COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZIA CHISHTI<br>SARAH POBERESKIN<br><br>               Plaintiffs,<br><br>v.<br><br>TATIANA SPOTTISWOODE<br>JAMES SPOTTISWOODE<br>NANCY ERIKE SMITH<br>EDWARD E. JOHNSON<br>MICHAEL ZWEIG<br><br>               Defendants. | CIVIL ACTION NO. 1:22-cv-03490-ABJ |

**MEMORANDUM OF LAW OF DEFENDANT TATIANA SPOTTISWOODE IN**
**SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

GOLENBOCK EISEMAN ASSOR BELL
& PESKOE LLP
711 Third Avenue
New York, NY 10017
(212) 907-7300

MARK I. BAILEN PC
1250 Connecticut Ave. NW, Suite 700
Washington, DC 20036
(202) 656-0422

*Counsel for Defendant Tatiana Spottiswoode*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .............................................................................................................. 2

ARGUMENT .................................................................................................................. 9

I.   THE COMPLAINT SHOULB BE DISMISSED FOR LACK OF PERSONAL
     JURISDICTION ...................................................................................................... 9

     A.   Chishti Has Failed To Allege General Or Specific Jurisdiction Over
          Tatiana.......................................................................................................... 9

     B.   Pobereskin's Sole Claim For Loss of Consortium (Twelfth Cause of
          Action) Should Also Be Dismissed For Lack of Personal Jurisdiction ................ 15

II.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE
     A CLAIM ............................................................................................................. 16

     A.   Libel/Slander/False Light (First And Third Causes Of Action) ........................... 17

          1.   The Statements To Congress Are Privileged And Protected
               Speech ................................................................................................... 17

          2.   The Truthfulness Of All Of The Alleged Statements Was
               Already Established In The Award, Which Chishti Is Barred By
               Collateral Estoppel From Re-Litigating...................................................... 20

          3.   The Comment To The Telegraph Is A Non-Actionable
               Statement Of Opinion And/Or Privileged Comment On Matters
               Of Public Interest ................................................................................... 22

     B.   Abuse Of Process (Fourth Cause of Action)......................................................... 28

     C.   Breach Of Contract (Fifth Through Eighth Causes of Action)............................. 32

     D.   Tortious Interference (Eleventh Cause of Action)................................................ 37

     E.   Intentional Infliction of Emotional Distress (Thirteenth Cause of
          Action) ......................................................................................................... 42

     F.   Conspiracy (Fourteenth And Fifteenth Causes Of Action)................................... 43

CONCLUSION.............................................................................................................. 45

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
  842 F. Supp. 2d 85 (D.D.C. 2012) ...........................................................................44

*Agaba v. Triple Canopy*,
  No. 22-cv-00002, 2022 WL 17356880 (D.D.C. Dec. 1, 2022) ..............................12

*Aifang Shi v. Cent. Ariz. Coll.*,
  No. CV-07-1147, 2008 WL 11395569 (D. Ariz. Dec. 3, 2008), *aff'd*, 399 F.
  App'x 254 (9th Cir. 2010) ........................................................................................26

*Aiken v. Lustine Chevrolet, Inc.*,
  392 F. Supp. 883 (D.D.C. 1975) ..............................................................................16

*Akhmetshin v. Browder*,
  275 A.3d 290 (D.C. 2022) ...............................................................................13, 14

*Alexander v. Wash. Gas Light Co.*,
  481 F. Supp. 2d 16 (D.D.C. 2006) ...........................................................................20

*Allen v. McCurry*,
  449 U.S. 90 (1980).....................................................................................................21

*Alston v. Flagstar Bank F.S.B.*,
  12-cv-2030, 2014 WL 12803918 (D.D.C. Apr. 10, 2014).......................................35

*Armstrong v. Thompson*,
  80 A.3d 177 (D.C. 2013) ...................................................................................20, 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................17

*Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*,
  No. 19-cv-00089, 2020 WL 6262090 (D.D.C. Oct. 23, 2020) ...............................11

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003) ...........................................................................10

*Banks v. Kramer*,
  603 F. Supp. 2d 3 (D.D.C. 2009), *aff'd*, 2009 WL 5526780 (D.C. Cir. Dec. 30,
  2009) .........................................................................................................................18

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
  383 F. Supp. 2d 32 (D.D.C. 2005) ...............................................................38, 39, 41

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................17

*Black v. Ganieva*,
    No. 21 Civ. 8824, 2022 WL 2374514 (S.D.N.Y. June 30, 2022), *aff'd*, 2023
    WL 2317173 (2d Cir. Mar. 2, 2023) ....................................................................30, 44

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
    137 S. Ct. 1773 (2017) ...............................................................................................15

*Camp v. Kollen*,
    567 F. Supp. 2d 170 (D.D.C. 2008) ...........................................................................21

*Carpenter v. King*,
    792 F. Supp. 2d 29 (D.D.C. 2011) .............................................................................27

*Catalanello v. Kramer*,
    18 F. Supp. 3d 504 (S.D.N.Y. 2014) ..........................................................................26

*Coles v. Wash. Free Weekly, Inc.*,
    881 F. Supp. 26 (D.D.C. 1995) .......................................................................23, 24, 25

*Democratic State Comm. of D.C. v. Bebchick*,
    706 A.2d 569 (D.C. 1998) ..........................................................................................40

*Doe v. Lee*,
    No. 19-cv-0085, 2020 WL 759177 (D.D.C. Feb. 14, 2020) .......................................38

*Easaw v. Newport*,
    No. 17-28, 2018 WL 4964500 (D.D.C. Oct. 15, 2018) .........................................37, 41

*Econ. Research Servs. Inc. v. Resolution Econ., LLC*,
    208 F. Supp. 3d 219 (2016) ........................................................................................40

*Elghannam v. Nat'l Ass'n of Boards of Pharmacy*,
    No. 15-CV-01554 (CRC), 2016 WL 3919806 (D.D.C. July 15, 2016), *aff'd*,
    697 F. App'x 8 (D.C. Cir. 2017) ................................................................................39

*Elliott v. Fed. Deposit Ins. Corp.*,
    305 F. Supp. 2d 79 (D.D.C. 2004) .............................................................................20

*In re Ellipso, Inc.*,
    No. 09-00148, 2011 WL 482726 (D.C. Bankr. Feb. 7, 2011) .....................................43

*Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*,
    355 A.2d 808 (D.C. 1976) ..........................................................................................12

*Flavell v. Collier*,
  No. 20-cv-0959, 2021 WL 3856615 (D.D.C. Aug. 30, 2021) .................................................39

*Franklin v. Pepco Holdings, Inc.*,
  875 F. Supp. 2d 66 (D.D.C. 2012) .........................................................................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).................................................................................................................10

*Hammand v. Lewis*,
  638 F. Supp. 2d 70 (D.D.C. 2009) .........................................................................................21

*Havilah Real Prop. Servs. v. VLK, LLC*,
  108 A.3d 334 (D.C. 2015) .......................................................................................................37

*Hayhurst v. Calabrese*,
  988 F.2d 1280 (D.C. Cir. 1993) .............................................................................................12

*Heade v. Wash. Metro. Area Transit Auth.*,
  No. 09-02460, 2010 WL 938462 (D.D.C. Mar. 12, 2010), *aff'd*, 2010 WL
  3521596 (D.C. Cir. Sep. 2, 2010) ...........................................................................................2

*Herron v. Fannie Mae*,
  861 F.3d 160 (D.C. Cir. 2017) ...............................................................................................40

*Hill v. Medlantic Health Care Group*,
  933 A.2d 314 (D.C. 2007) .................................................................................................43, 44

*Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*,
  677 F. Supp. 2d 195 (D.D.C. 2010) ........................................................................................29

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017).........................11

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011).................................................................................................................11

*Kaspersky Lab, Inc. v. U.S. Dep't Homeland Sec.*,
  909 F.3d 446 (D.C. Cir. 2018) .................................................................................................3

*Kelly v. Golden*,
  352 F.3d 344 (8th Cir. 2003) ..................................................................................................33

*Lamb v. U.S.*,
  No. 21-3000, 2022 WL 2966337 (D.D.C. July 26, 2022) ......................................................42

*Lane v. Random House*,
  985 F. Supp. 141 (D.D.C. 1995) .............................................................................................24

*Lemon v. Kramer*,
   270 F. Supp. 3d 125 (D.C. 2017) ............................................................................28, 30, 31

*Levi v. Brown & Williamson Tobacco Corp.*,
   528 F. App'x 4 (D.C. Cir. 2013) .............................................................................16, 43

*Logan v. Dist. of Columbia*,
   447 F. Supp. 1328 (D.D.C. 1978) .................................................................................27

*Long v. Howard Univ.*,
   No. 02-1374, 2006 WL 8448073 (D.D.C. Dec. 7, 2006) ............................................16

*Luhn v. Scott*,
   No. 19-cv-1180, 2019 WL 5810309 (D.D.C. Nov. 7, 2019), *aff'd*, 843 F.
   App'x 326 (D.C. Cir. 2021) ...........................................................................................25

*Masterson-Cook v. Criss Bros. Iron Works, Inc.*,
   722 F. Supp. 810 (D.D.C. 1989) ...................................................................................16

*McCarthy v. Kleindienst*,
   741 F.2d 1406 (D.C. Cir. 1984) ...................................................................................28

*Metro D.C. Paving, Highway & Constr. Materials Council AFLCIO v. Roubin &*
   *Janeiro, Inc.*,
   No. 80-699, 1981 WL 2392 (D.D.C. May 26, 1981) ...................................................44

*Mitchell v. U.S.*,
   No. 05-0916, 2007 WL 148781 (D.D.C. Jan. 16, 2007) ..............................................21

*Mueller Brass Co. v. Alexander Millburn Co.*,
   152 F.2d 142 (D.C. Cir. 1945) .....................................................................................14

*Myers v. Plan Takoma, Inc.*,
   472 A.2d 44 (D.C. 1983) .........................................................................................23, 26

*Naegele v. Albers*,
   110 F. Supp. 3d 126 (D.D.C. 2015) ..............................................................................43

*Ortberg v. Goldman Sachs Group*,
   64 A.3d 158 (D.C. 2013) .........................................................................................42, 43

*Precision Contracting Solutions, LP v. ANGI Homeservices, Inc.*,
   415 F. Supp. 3d 113 (D.D.C. 2019) ..............................................................................37

*Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*,
   No. 14-8390, 2016 WL 7177532 (C.D. Cal. May 26, 2016) ........................................16

*Rain v. Rolls-Royce Corp.*,
    626 F.3d 372 (7th Cir. 2010) ............................................................................32

*Reese v. Geneva Enters., Inc.*,
    No. 96-1575, 1997 WL 214864 (D.D.C. 1997) ................................................16

*Robo-Team, Inc. v. Endeavor Robotics*,
    313 F. Supp. 3d 19 (D.D.C. 2018) ...................................................................13

*Sanchez v. Office of State Superintendent of Educ.*,
    45 F.4th 388 (D.C. Cir. 2022) ..........................................................................17

*Sanders v. Wash. Metro. Area Transit Auth.*,
    819 F.2d 1151 (D.C. Cir. 1987) .......................................................................21

*Scott v. D.C.*,
    101 F.3d 748 (D.C. Cir. 1996) .........................................................................29

*Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*,
    59 F. Supp. 2d 27 (D.D.C. 1999) ...............................................................40, 41

*Soliman v. George Washington Univ.*,
    658 F. Supp. 2d 98 (D.D.C. 2009) ...................................................................41

*Stewart v. Ramsay*,
    242 U.S. 128 (1916) .........................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................2

*Thompson v. HSBC Bank USA, N.A.*,
    850 F. Supp. 2d 269 (D.D.C. 2012) .................................................................35

*Thorp. v. Dist. of Columbia*,
    319 F. Supp. 3d 1 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019).....................28, 31

*U.S. v. Ferrara*,
    54 F.3d 825 (D.C. Cir. 1995) .....................................................................10, 11

*UTE Indian Tribe of Uintah & Ouray Reservation v. U.S. Dep't of Interior*,
    560 F. Supp. 3d 247 (D.D.C. 2021) .................................................................12

*Valor Healthcare, Inc. v. Pinkerton*,
    620 F. Supp. 2d 974 (W.D. Ark. 2009).............................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014).....................................................................................11, 14

*Walker v FedEx Office & Print Servs.*,
    123 A.3d 160 (D.C. 2015) ...................................................................21

*Walsh v. Hagee*,
    900 F. Supp. 2d 51 (D.D.C. 2012) .........................................................10

*Washington v. Smith*,
    80 F.3d 555 (D.C. Cir. 1996) ................................................................23

*Webster v. Sun Co.*,
    790 F.2d 157 (D.C. Cir. 1986) ......................................................18, 19, 20

*William Loveland Coll. v. Distance Educ. Accreditation Comm'n*,
    347 F. Supp. 3d 1 (D.D.C. 2018), *aff'd*, 788 F. App'x 5 (D.C. Cir. 2019)..............38

*Yip v. Pagano*,
    606 F. Supp. 1566 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir. 1986)...........18, 19, 20

*Yoube v. Strasser*,
    113 F. Supp. 289 (D.D.C. 1953) ............................................................14

*Zeneca Ltd. v. Mylan Pharms., Inc.*,
    173 F.3d 829 (Fed. Cir. 1999)...............................................................12

**Statutes and Rules**

9 U.S.C. §12..................................................................................20

D.C. Code §13-423 ......................................................................10, 11, 15

D.C. Code §13-442 ...........................................................................10

H.R. 4445, 117th Congr. (2021-22), Ending Forced Arbitration of Sexual Assault
    and Sexual Harassment Act of 2021 ................................................1, 6, 8

Fed. R. Civ. P. 11 ............................................................................30

Fed. R. Civ. P. 12 .......................................................................9, 10, 16

Rules of the House of Representatives, 117th Congr., Rule XI ...................................7

## PRELIMINARY STATEMENT

This case is a shameless attempt by plaintiff Zia Chishti ("Chishti") to: collaterally attack

a 4-year-old arbitration award that found that he sexually harassed and assaulted defendant Tatiana

Spottiswoode ("Tatiana"); and retaliate against (and re-victimize) Tatiana for lawfully, and

bravely, providing testimony, in response to a subpoena from the U.S. House Judiciary Committee,

that exposed Chishti's wrongdoing in support of the Ending Forced Arbitration of Sexual Assault

and Sexual Harassment Act of 2021, which President Biden signed into law on March 3, 2022. As

part of his self-proclaimed "nothing-to-lose" campaign of harassment, Chishti has sued not only

Tatiana, but also her lawyer in the arbitration, her lawyer in connection with her Congressional

testimony, her father, and her father's lawyer.[1] The Complaint disregards well-settled, clearly

applicable law rendering the claims baseless, and is in effect a form of "revenge-porn" laced with

gratuitous and one-sided personal text messages and photographs, in an apparent attempt to

salvage Chishti's reputation – all of which the arbitrator previously considered in issuing a scathing

Award that found Chishti to be non-credible and ruled against him on all counts. Glaringly, the

179-page, 15-count Complaint reads as if the arbitration award never happened – a serious

misrepresentation in a pleading to this Court.

At the threshold, the Complaint should be dismissed for lack of personal jurisdiction. As

the Complaint acknowledges, Tatiana resides in New York and is a law student at Columbia. The

Complaint's only allegation of any relevant contact by Tatiana with the District of Columbia is her

provision of testimony to the Judiciary Committee pursuant to a subpoena. This discrete contact

with the federal government, compelled by subpoena, is jurisdictionally irrelevant under the

---

[1] Chishti explained, in commenting on this lawsuit, that he "ha[s] nothing to lose." Michael Schaffer, *A Secret Report About a CEO's Sexual Misconduct Was Just Made Public By Congress*, Politico (Dec. 22, 2022) (https://www.politico.com/news/magazine/2022/12/22/sexual-abuse-congress-lawsuit-00075061).

government contacts exception, and dragging Tatiana into court in the District would not comport with due process. The Court need go no farther to dismiss the Complaint as against Tatiana.

On the merits, however, the claims suffer from myriad fatal, incurable defects, which Chishti cannot overcome by spreading his baseless rhetoric across 15 purported claims. In short, the claims all center on the fanciful notion that Tatiana's Congressional testimony was somehow wrongful. But such testimony (and other alleged statements to Congress) are subject to an absolute privilege. Moreover, the truth of Tatiana's testimony was already adjudicated in her favor in the arbitration, which was Chishti's forum of choice for the adjudication of sexual harassment and assault claims. Having lost badly, Chishti never moved to vacate the arbitration award (which was paid in full) and is barred by collateral estoppel from seeking to re-litigate the matters adjudicated therein. Nor can he manufacture a claim based on a brief comment by Tatiana included in a single article published by the Telegraph (U.K.) after the Congressional testimony and *after he had already resigned from his companies*. The comment was general, innocuous, restrained (particularly in light of Chishti's and his company's public attacks on Tatiana's credibility), entirely consistent with Tatiana's privileged testimony, and core protected speech under the First Amendment.

For the reasons set forth below, the Complaint should be dismissed for lack of personal jurisdiction and/or with prejudice for failure to state a claim.[2]

## BACKGROUND[3]

Chishti is the founder of Align Technology (known for the Invisalign tooth alignment

---

[2] Tatiana also joins in, and incorporates by reference, the motions to dismiss by her co-defendants.

[3] This background derives from the Complaint, the documents attached to and/or referred to therein, and matters of which the Court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also Heade v. Wash. Metro. Area Transit Auth.*, 2010 WL 938462, at *1 n.1 (D.D.C. Mar. 12, 2010), *aff'd*, 2010 WL 3521596 (D.C. Cir. Sep. 2, 2010)

system), and, until November 2021, was the Chief Executive Officer of the technology company Afiniti. Comp. ¶31a. Chishti was also the Chairman and "largest individual shareholder" of The Resource Group ("TRG"), which employed Tatiana's father, co-defendant James Spottiswoode. *Id.* ¶¶12, 322. TRG is the largest shareholder of Afiniti. *Id.* ¶12. Chishti and his wife, co-plaintiff Sara Pobereskin, are domiciled in Puerto Rico. *Id.* ¶29. The Complaint does not allege that they ever lived or spent any meaningful time in the District of Columbia at any relevant time.

Tatiana is domiciled in New York and a law student at Columbia. *Id.* ¶32a. In December 2014, when Chishti was 44 and Tatiana was a 21-year-old college student, Chishti took Tatiana on a ski trip, during which he expressed "physical and romantic" interest in her, and which involved Chishti "develop[ing] an excuse to placate her parents, whom [Chishti] had known for a decade, and who might have objected to [Tatiana] seeing [Chishti] in other than platonic context." *Id.* ¶¶34, 38. Commencing with a trip to Ibiza, Spain in September 2015, they began having sexual encounters. *Id.* ¶42. Even early in this "relationship," the Complaint acknowledges that Tatiana attempted to "br[eak] [it] off" as early as November 2015. *Id.* ¶45.

In April 2016, Tatiana was hired by Afiniti as a data analyst in the New York office. *Id.* ¶¶32a, 48. She remained employed by Afiniti until she was subjected to a violent assault by Chishti during a business trip in Brazil the night of September 15-16, 2017. *See infra* at 6. Tatiana's counsel thereafter contacted Chishti and Afiniti regarding her claims against them for harassment and assault. Comp. ¶¶106, 108. In December 2017, Chishti and Afiniti commenced arbitration against Tatiana in the AAA Employment Arbitration Tribunal, pursuant to a compulsory arbitration clause in her employment agreement. *Id.* ¶111.

---

(judicial notice of arbitration award); *Kaspersky Lab, Inc. v. U.S. Dep't Homeland Sec.*, 909 F.3d 446, 464 (D.C. Cir. 2018) (judicial notice of "congressional hearings and legislative materials").

Following Tatiana's experience in Brazil, James Spottiswoode resigned from TRG. *Id.* ¶115. Almost a year later (just before Tatiana was scheduled to give her deposition in her arbitration), TRG commenced an arbitration against James Spottiswoode, accusing him of theft of trade secrets. *Id.* ¶117. In December 2021, TRG settled its arbitration against James Spottiswoode by paying money to James. *Id.* ¶156.

In the arbitration between Tatiana and Chishti/Afiniti, after lengthy, substantial discovery and a two-week hearing, on April 19, 2019, the arbitrator issued a 27-page final award ("Award").[4] The arbitrator found Chishti and Afiniti liable to Tatiana for sexual harassment under the DC Human Rights Act and/or Title VII of the Civil Rights Act, and found Chishti liable for assault and battery and intentional infliction of emotional distress. Award 23-24. The arbitrator awarded Tatiana over $4.5 million in damages against Chishti, including $2 million in punitive damages, and $1 million in damages against Afiniti, including $750,000 in punitive damages. *Id.* at 25.

The award contains extensive, detailed findings of misconduct against Chishti and Afiniti and is incorporated by reference herein in its entirety. The arbitrator found that Tatiana's testimony "was for the most part credible," whereas "the testimony offered by Mr. Chishti was often tailored to meet the needs of his defense and divorced from reality." *Id.* at 2. Chishti "was less than truthful on big matters, small matters, and facts that did not fit his narrative." *Id.* at 3.

Chishti started off as a "family friend and mentor" to Tatiana, but he "conceded that he became sexually interested in her as soon as they met when she was twelve or thirteen." *Id.* at 3. He "determined to pursue that interest when she was of legal age." *Id.* Shortly after their sexual encounters commenced, Tatiana "had a quick change of heart and terminated [the relationship]

---

[4] The Award is a public document of which the Court may take judicial notice. (https://docs.house.gov/meetings/JU/JU00/20221208/115220/HHRG-117-JU00-20221208-SD999.pdf).

only ten weeks after it started." *Id.* at 4. Chishti knew, at that time, "that indulging in alcohol and drugs was a necessary accompaniment if the sex he desired was to be had." *Id.*

The arbitrator found: "[D]uring the course of her tenure with Afiniti US, Ms. Spottiswoode was subjected to an unrelenting onslaught of sexual overtures from Mr. Chishti, her CEO. When she was too firm in saying no, which she consistently did, she would be punished by long periods of noncommunication. The very person who controlled her future with the company had the unique ability to punish her." *Id.* at 5.

With respect to a business trip to Dubai in December 2016, the arbitrator found the following "to be clear": "(1) during an after-work social event on the first evening of the conference, Mr. Chishti, who was drunk, put his hand inside Ms. [Spottiswoode's] pants on her rear in front of some of their colleagues, and (2) at the same conference he engaged in similar sexual misconduct directed at another young female Afiniti employee, [name redacted] who was sent home early after complaining to him the next day." *Id.* at 6. That other female victim "later resigned and filed a demand against Chishti that Afiniti ultimately settled," but Afiniti "did nothing to prevent a future recurrence." *Id.*

The arbitrator found that, only a month after the Dubai incident, during a business trip to Mexico City, "in front of colleagues on this work-sponsored trip, [Chishti] dug his nails into [Tatiana's] hand and called her 'a total bitch' when she rejected his attempt at hand holding." *Id.* After this incident, Tatiana sought advice about the situation from the Afiniti Vice President in charge of the New York office. *Id.* at 11. The arbitrator found that this superior "set out three options – leave the company, ask a third party to talk with Chishti, or avoid Chishti, especially when he's drunk. Of these, he thought that avoidance was the best option." *Id.*

Later in August 2017, Tatiana "repeatedly expressed her substantial anxiety and concerns

about any resumption of a sexual relationship, and her fear of his wrath if she rejected him." *Id.* at 7. Chishti "dismissed those concerns, responding to her panic attack with the assurance that 'two drinks and a rail [of cocaine] will likely fix' her anxiety." *Id.* (brackets in Award).

The arbitrator found that in September 2017, during the business trip to Brazil, Tatiana told Chishti that she did not want to have sex with him. *Id.* at 7-8. However, "[u]ltimately, after much drinking and cocaine use, and Mr. Chishti's dismissal of her text asking him to just let her sleep, she gave in to his demands for sex. *Id.* at 8. The arbitrator found that, during that encounter, Chishti inflicted "a serious beating evidenced by blunt force trauma, involving 'a great deal of force and aggression, with apparent anger.'" *Id.* "[A]lthough [Tatiana] told him repeatedly he was hurting her, he continued until she saw stars." *Id.* The arbitrator found that Tatiana's "consent to sex, to the extent she could conceivably legally consent in her inebriated and drugged condition, is not consent to the physical beating [Chishti] gave her that went far beyond any rough sex involved in prior encounters. Ms. Spottiswoode told him repeatedly that he was hurting her and she wanted him to stop. He ignored her protestations." *Id.* at 19. "[T]his beating was the straw that broke the camel's back, after a 17-month campaign in which [Chishti] consistently made light of all her attempts to say no." *Id.* at 8.

Neither Chishti nor Afiniti moved to vacate the Award, which they paid in full. The Complaint does not allege to the contrary. Despite the arbitrator's findings and the liability to which Chishti exposed Afiniti, Afiniti did not fire Chishti.

In July 2021, more than two years after the Award, a bill was introduced in the U.S. House of Representatives to ban forced arbitration of sexual assault and sexual harassment claims.[5] In

---

[5] H.R. 4445, 117th Cong. (2021-22) (https://www.congress.gov/bill/117th-congress/house-bill/4445/summary/00).

furtherance of this bill, on November 16, 2021, the House Judiciary Committee held a hearing, titled "Silenced: How Forced Arbitration Keeps Victims of Sexual Violence and Sexual Harassment in the Shadows." At the inception of the hearing, Chairman Nadler stated:

> Four of our witnesses today are survivors of sexual harassment and sexual assault. We are here to listen to their stories. Because they were forced into arbitration agreements as a condition of their employment, this is the first time many of these stories will be told in public. By forcing these women into silence, by denying them their day in court, forced arbitration allowed toxic office cultures to flourish and emboldened sexual predators to operate with impunity.[6]

The Committee subpoenaed Tatiana and several other women to testify. The Committee served the subpoena on Tatiana on Friday, November 12, 2021. Comp. ¶130. In compliance therewith, on November 15, 2021, Tatiana, via her then-counsel Nancy Smith, provided written testimony to the Committee (*id.* ¶131, Ex. B1), as did all seven witnesses who testified at the hearing.[7] In fact, the provision of written testimony is required by the Rules of the House of Representatives: "Each committee shall, to the greatest extent practicable, require witnesses who appear before it to submit in advance written statements of proposed testimony . . . ."[8]

In further compliance with the subpoena, on November 16, 2021, Tatiana appeared before the Judiciary Committee and provided verbal testimony. Comp. ¶142. Tatiana's written and verbal testimony was fully consistent with the arbitrator's findings.[9] The provision of this testimony is the Complaint's only alleged conduct of Tatiana in the District of Columbia.

---

[6] Transcript, House Hearing, 117th Cong. (Nov. 16, 2021) (https://www.congress.gov/event/117th-congress/house-event/LC67928/text?s=1&r=24).

[7] List of Witnesses and Supporting Documentation, House Hearing, 117th Cong. (Nov. 16, 2021) (https://www.congress.gov/event/117th-congress/house-event/114227?s=1&r=4).

[8] House Rule XI(2)(g)(5) (https://rules.house.gov/rules-house-representatives).

[9] *Compare* Award (https://docs.house.gov/meetings/JU/JU00/20221208/115220/HHRG-117-JU00-20221208-SD999.pdf) *with* Transcript (https://www.congress.gov/event/117th-congress/house-event/LC67928/text?s=1&r=24).

Congress ultimately passed the bill – the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 – and it was signed into law by President Biden on March 3, 2022.[10] At a February 7, 2022 House Hearing, members of Congress expressly relied on the testimony of Tatiana and the other victims who testified. Congresswoman Pramila Jayapal, a co-leader of the bill, stated: "This bipartisan bill is essential for survivors like Tatiana Spottiswoode, who bravely testified under the protection of a friendly subpoena at a House Judiciary Committee hearing. . . . Her story, and countless others like hers, show why this bill is so critical."[11] In connection with a Judiciary Committee hearing on December 8, 2022, the Committee entered Tatiana's arbitration award into the public Congressional record.[12]

Following Tatiana's testimony, several members of Afiniti's board – including former UK Prime Minister David Cameron and former Chairman of the Joint Chiefs of Staff Michael Mullen – resigned their positions with Afiniti. Comp. Ex. C. Chishti resigned by November 18, 2021. *Id.* Ex. D1. However, immediately following Tatiana's testimony, Chishti and certain Afiniti personnel engaged in a public campaign to discredit Tatiana, while declaring that Chishti would retain his positions. Indeed, the articles attached to the Complaint reported that: Afiniti's board had originally "stood by Mr. Chishti and said the explosive allegations against him made by Tatiana Spottiswoode were 'false,'"; Afiniti had sent an email to staff that "defended Mr. Chishti to its own employees and rejected Ms. Spottiswoode's account"; and Afiniti's top lawyer "had

---

[10] White House, *Remarks by President Biden at Signing of H.R. 4445* (Mar. 3, 2022) (https://www.whitehouse.gov/briefing-room/speeches-remarks/2022/03/03/remarks-by-president-biden-at-signing-of-h-r-4445-ending-forced-arbitration-of-sexual-assault-and-sexual-harassment-act-of-2021/).

[11] House Hearing, 117th Congr. (Feb. 7, 2022) (https://www.congress.gov/congressional-record/volume-168/issue-24/house-section/article/H983-9).

[12] Hearing: *Undue Influence: "Operation Higher Court" and Politicking at SCOTUS* (Dec. 8, 2022) (https://docs.house.gov/Committee/Calendar/ByEvent.aspx?EventID=115220) (see the final document listed under "Supporting Documents").

examined and rejected Ms. Spottiswoode's testimony." Comp. Ex. D1. It was further reported that Chishti "denied wrongdoing" and described "Ms. Spottiswoode's allegations as 'particularly hurtful' because 'one of my priorities [is] to see that they [women] do absolutely as well as they can.'" *Id.* Ex. C (brackets in original).

Only after Chishti's resignation, the night of November 18, 2021, a British newspaper, the Telegraph, while simultaneously reporting on Chishti's/Afiniti's public attacks on Tatiana and Chishti's resignation that had already occurred, published a short comment from Tatiana in which she continued to advocate for an end to forced arbitration in the workplace, expressed her hope that Afiniti would implement changes to hold itself more accountable, and expressed her belief that the pending arbitration against her father (described during her Congressional testimony) would be discontinued. *Id.* Ex. D1. Tatiana did not provide this comment in the District of Columbia, and the Complaint makes no allegation to the contrary.

Almost a year later, on November 13, 2022, Chishti filed this action against Tatiana, her lawyer in the arbitration (Michael Zweig), her lawyer in connection with her Congressional testimony (Nancy Smith), her father (James Spottiswoode), and her father's lawyer from his arbitration (Edward Johnson), purporting to assert 15 claims. Twelve of them are asserted against Tatiana, and all are defective for the reasons discussed below (and in the co-defendant's motions).

## ARGUMENT

### I.   THE COMPLAINT SHOULB BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

#### A.   Chishti Has Failed To Allege General Or Specific Jurisdiction Over Tatiana

The Complaint should be dismissed pursuant to FRCP 12(b)(2) because the Court does not have general or specific jurisdiction over Tatiana given that she is not domiciled in the District of Columbia and her sole contact with the District as it pertains to Chishti's claims was her testimony

before Congress in response to a subpoena.

Under FRCP 12(b)(2), "plaintiff bears the burden of making a prima facie showing that the court has personal jurisdiction over the defendants." *Walsh v. Hagee*, 900 F. Supp. 2d 51, 56 (D.D.C. 2012). To meet this burden, "a plaintiff must plead specific facts providing a basis for personal jurisdiction." *Id.* (internal quotes omitted); *see also Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42 (D.D.C. 2003) (same). The Court must have general or specific jurisdiction over a party, *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011), but neither basis for jurisdiction exists as to Tatiana.

The Complaint makes clear that the Court does not have general jurisdiction over Tatiana. For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 924; D.C. Code §13-442. As the Complaint alleges, Tatiana is domiciled in New York. Comp. ¶32a. As such, the Court does not have general jurisdiction over her.

Nor does the Court have specific jurisdiction over Tatiana. Specific jurisdiction requires a two-step analysis. *See U.S. v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). First, the Court must examine whether the claims arise from conduct satisfying the District's long-arm statute, D.C. Code §13-423. The only provisions of the long arm statute on which Chishti may conceivably seek to rely as against Tatiana require: "(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia"; or "(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered in the District of Columbia." D.C. Code §13-423(a).

Second, the Court must analyze whether the assertion of personal jurisdiction comports with due process. "A court's jurisdiction over a defendant satisfies the demands of due process

when there are minimum contacts between the defendant and the forum such that the maintenance

of the suit does not offend traditional notions of fair play and substantial justice." *Ferrara*, 54 F.3d

at 828 (internal quotes omitted). "For a State to exercise jurisdiction consistent with due process,

the defendant's suit-related conduct must create a substantial connection with the forum State."

*Walden v. Fiore*, 571 U.S. 277, 284 (2014). "As a general rule, the sovereign's exercise of power

requires some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *J.

McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (internal quotes omitted).

Here, the Complaint does not plead facts that would satisfy the long-arm statute or survive

due process scrutiny. Section (a)(4) of the long-arm statute is easily disposed of, because the

Complaint does not allege that Tatiana "regularly does or solicits business, engages in any other

persistent course of conduct, or derives substantial revenue from goods used or consumed, or

services rendered in the District." D.C. Code §13-423(a)(4).

Moreover, both sections (a)(3) and (a)(4) require "tortious injury in the District of

Columbia." The Complaint does not establish this requirement either. It alleges that Chishti is

domiciled in Puerto Rico. Comp. ¶29. There is no allegation that Chishti ever lived in, or even

spent meaningful time in, the District, let alone at any relevant time, or that he otherwise incurred

any alleged injury in the District. *See Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 138

(D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017) (there is no nationwide jurisdiction for a

defamation action; "the alleged injury – to Plaintiff's reputation – occurred in Virginia where

Plaintiff lives"); *Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*, 2020 WL 6262090,

at *5 (D.D.C. Oct. 23, 2020) (plaintiff's allegations that she had "frequent contact with the District

because of the nature of her work . . . do not establish an injury in the District"; "her Complaint

and her briefs are devoid of any allegation that she was ever physically present in the District").

The Complaint's allegations also fail to satisfy the long-arm statute for the independent reason that the only act by Tatiana in the District at issue here – her provision of testimony to Congress pursuant to a subpoena – is jurisdictionally irrelevant under the government contacts exception. Under this exception, "entry into the District of Columbia by nonresidents for the purpose of contacting federal government agencies is not a basis for the assertion of personal jurisdiction." *Agaba v. Triple Canopy*, 2022 WL 17356880, at *3 (D.D.C. Dec. 1, 2022) (internal quotes omitted). "[T]his exception is grounded in concerns regarding the First Amendment right to petition the federal government as well as the policy against the creation of national supercourts in the District of Columbia." *Zeneca Ltd. v. Mylan Pharms., Inc.*, 173 F.3d 829, 831 (Fed. Cir. 1999) (concurrence); *see also Env't Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976) (same).

Thus, where the defendant's sole alleged tortious conduct in the District giving rise to the plaintiff's claims involves contacting the government, the government contacts exception precludes the assertion of personal jurisdiction. *See Hayhurst v. Calabrese*, 988 F.2d 1280 (D.C. Cir. 1993) ("the type of contacts appellants have alleged (lobbying the federal government) falls within the 'government contacts' exception to the exercise of personal jurisdiction under the District's long-arm statute"); *UTE Indian Tribe of Uintah & Ouray Reservation v. U.S. Dep't of Interior*, 560 F. Supp. 3d 247, 259 (D.D.C. 2021) (government contacts exception precluded application of section (a)(3) of the long-arm statute because the alleged tortious conduct involved dealings with Congress and the Executive); *Zeneca Ltd.*, 173 F.3d at 833 (government contacts exception applied to allegations that defendant committed patent infringement through its filing with the Food and Drug Administration). Indeed, the government contacts exception has been

applied where, as here, the plaintiff asserts a defamation claim based on statements made to the government. *Robo-Team, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 25 n.6 (D.D.C. 2018) ("To the extent Robo-Team argues that the government contacts rule has an exception for defamatory statements made to contracting officers, it does not point to any authority recognizing such an exception. . . . As a federal judge interpreting District law, I decline to adopt Robo-Team's novel rule."). Because Tatiana's sole contact with the District on which Chishti premises his claims was a government contact, the long-arm statute is not satisfied.

The recent decision from the D.C. Court of Appeals addressing the government contacts exception, *Akhmetshin v. Browder*, 275 A.3d 290 (D.C. 2022), does not change this result. That case addressed an inapposite issue: whether government contacts can be considered for purposes of section (a)(4)'s additional requirement of a "persistent course of conduct" in the District. *Id.* at 292. The Court held that government contacts can be considered for this purpose. *Id.* at 296. But section (a)(4) is inapplicable here because even if Tatiana's testimony were considered, it obviously does not constitute a "persistent course of conduct." Moreover, *Akhmetshin* does not affect the government contacts case law discussed above holding that personal jurisdiction cannot be established where, as here, the *sole* act at issue is a government contact. As per the cases above, the government contact is jurisdictionally irrelevant for purposes of determining whether there has been an act in the District giving rise to the plaintiff's claims under section (a)(3).

This conclusion is particularly compelling where, as here, Tatiana's appearance in the District was compelled by subpoena and accords with the longstanding rule that "suitors, as well as witnesses, coming from another state or jurisdiction, are exempt from the service of civil process while in attendance upon court, and during a reasonable time in coming and going." *Stewart v. Ramsay*, 242 U.S. 128, 129 (1916). That same immunity also applies to appearances before

13

Congress. *Yoube v. Strasser*, 113 F. Supp. 289, 289 (D.D.C. 1953) ("[t]he investigative power of Congress constitutes important implementation of its legislative and appropriating functions").

Even if the long-arm statute were satisfied by Tatiana's brief Congressional testimony, which it is not, premising personal jurisdiction on this limited government contact certainly would not comport with due process. In *Akhmetshin*, the Court held that the government contacts exception is relevant to the due process analysis, and "that is a question the federal courts can resolve." *Akhmetshin*, 275 A.3d at 296.  The D.C. Circuit has addressed this issue, holding that premising jurisdiction solely on government contacts does not comport with the constitutional specific jurisdiction analysis. *See Mueller Brass Co. v. Alexander Millburn Co.*, 152 F.2d 142, 145 (D.C. Cir. 1945) (defendant's maintenance in the District of a representative to communicate with government agencies was insufficient to establish personal jurisdiction "[w]hether measured by the 'corporate presence' standard, *or the 'reasonable jurisdiction' standard, or by the relation of the cause of action to the forum* . . . . (emphasis added)). *Mueller Brass* remains binding precedent on this Court.

Tatiana appeared briefly in the District in connection with this matter only because it happens to be the seat of national government where legislation is made, and she was under compulsion of a subpoena to do so. As such, Tatiana did not "purposefully avail" herself of the District, nor would it be reasonable for the Court to assert personal jurisdiction over her. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State").

Finally, tacitly recognizing that there is no basis for general or specific jurisdiction over Tatiana, the Complaint also appears to attempt to premise personal jurisdiction on a contractual

agreement, but this is meritless. The Complaint alleges that "[t]he contract between [Chishti] and Ms. Spottiswoode that Defendant Ms. Spottiswoode has violated . . . has an agreed choice of laws and venue that is the District of Columbia." Comp. ¶30c. The Complaint does not attach any such contract, however. This appears to be a reference to Tatiana's employment agreement, which was with *Afiniti*, not Chishti. Chishti has no standing to invoke or enforce that agreement, and certainly has failed to plead any contractual agreement by Tatiana to jurisdiction in this Court for the claims asserted against her by *Chishti*.[13]

The Complaint should be dismissed as against Tatiana for lack of personal jurisdiction.

### B.   Pobereskin's Sole Claim For Loss of Consortium (Twelfth Cause of Action) Should Also Be Dismissed For Lack of Personal Jurisdiction

The only claim asserted by plaintiff Pobereskin is the Twelfth Cause of Action for lack of consortium. *See* Comp. ¶292. The two provisions of the D.C. long-arm statute on which she may conceivably seek to rely – D.C. Code §§13-423(a)(3) or (a)(4) – both require that the defendant's acts or omissions "caus[ed] tortious injury in the District of Columbia." Pobereskin cannot satisfy this requirement because a loss of consortium claim is deemed to occur at the home, but plaintiffs do not allege that they ever lived in the District, let alone at any relevant time.

The U.S. Supreme Court recently confirmed that personal jurisdiction must be established for the claims by each plaintiff. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017) ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California – and allegedly sustained the same injuries as the nonresidents – does not

---

[13] The employment agreement is also irrelevant because Chishti does not assert any claim under the employment agreement, nor could he, as he is not a party thereto. His purported claims all arose well after Tatiana left Afiniti. Nor can Chishti premise personal jurisdiction on his allegation that "the contracts between [Chishti] and [his] employers that Defendants have tortiously interfered with have choices of laws and venue that are the District of Columbia" (Comp. ¶30d), because Tatiana is not a party to those purported agreements.

allow the State to assert specific jurisdiction over the nonresidents' claims. (emphasis in original));
*see also Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, 2016 WL 7177532, at *1
(C.D. Cal. May 26, 2016) ("Indeed, personal jurisdiction must be established *for each defendant*
and *by each plaintiff*" (emphasis in original, internal quotes and brackets omitted)). Accordingly,
Pobereskin must separately establish personal jurisdiction over her claim.

For a loss of consortium claim, the injury is deemed to occur in the "marital domicile."
*Masterson-Cook v. Criss Bros. Iron Works, Inc.*, 722 F. Supp. 810, 813 (D.D.C. 1989). The same
is true for other emotional/psychological claims. *See Reese v. Geneva Enters., Inc.*, 1997 WL
214864, at *5 (D.D.C. 1997) ("it is clear that [plaintiff's] alleged psychological injuries – wherever
they may have been caused – occurred in Virginia, his home state"); *Aiken v. Lustine Chevrolet,
Inc.*, 392 F. Supp. 883 (D.D.C. 1975) (plaintiff's alleged "injury to her credit rating and to her
mental and emotional well-being" were sustained where she resided). The plaintiffs allege that
they are "domiciled in Puerto Rico." Comp. ¶29. Thus, Pobereskin's alleged loss of consortium
"injury" could be found to have occurred only in Puerto Rico. She fails to allege injury in the
District, and thus her only asserted claim fails for lack of personal jurisdiction.[14]

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

A motion to dismiss pursuant to FRCP 12(b)(6) should be granted unless the Complaint
"contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

---

[14] Pobereskin's loss of consortium claim should also be dismissed because such a claim is
"collateral to the other spouse's claim in the sense that it depends on whether the underlying claim
against the defendant has been proven." *Long v. Howard Univ.*, 2006 WL 8448073, at *3 (D.D.C.
Dec. 7, 2006) (internal quotes and ellipses omitted); *see also Levi v. Brown & Williamson Tobacco
Corp.*, 528 F. App'x 4, 5 (D.C. Cir. 2013). Moreover, the underlying claim traditionally must
sound in tort, and there is "nothing in the case law" indicating that loss of consortium can attach
to other types of claims. *Long*, 2006 WL 8448073, at *3 n.4. For all of the reasons set forth herein,
Chishti has failed to state any claim against Tatiana – whether in tort or otherwise – and thus
Pobereskin's loss of consortium claim fails as well.

its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Complaint's well-pled factual allegations, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Allegations that "are merely consistent with" a defendant's liability" or demonstrate only a "possibility" of liability, without "further factual enhancement" to cross "the line between possibility and plausibility," are insufficient to state a claim. *Id.* at 557. Thus, "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Moreover, "a legal conclusion couched as a factual allegation" is not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. The failure to allege each of the elements of a claim "with adequate factual support" mandates dismissal. *Sanchez v. Office of State Superintendent of Educ.*, 45 F.4th 388, 395 (D.C. Cir. 2022) (internal quotes omitted).

### A.       Libel/Slander/False Light (First And Third Causes Of Action)

Chishti's First and Third Causes of Action purport to assert claims for libel, slander, and/or false light (referred to collectively herein as the defamation claims) based on Tatiana's verbal Congressional testimony, her written Congressional testimony, unspecified statements allegedly made to Congress leading up to her Congressional testimony, and her comment to the Telegraph. These claims should be dismissed for multiple reasons, including: (i) the Congressional testimony (verbal and written) and alleged statements leading to the testimony (even if properly pleaded, which they were not) are privileged and protected speech; (ii) Chishti is precluded by collateral estoppel from disputing the truth of the statements because these matters were already adjudicated in Tatiana's favor in the Award; and (iii) the claim based on the post-hearing/post-resignation comment to the Telegraph fails for the independent reasons that it is a non-actionable expression of opinion and/or subject to the privilege for fair comment on matters of public interest.

### 1.       The Statements To Congress Are Privileged And Protected Speech

All of the statements to Congress on which Chishti relies for his claims are protected as a

matter of law by the well-recognized privilege for communications to a legislative body.

"Congressional testimony, if related to the congressional proceeding, is absolutely privileged against defamation suits." *Banks v. Kramer*, 603 F. Supp. 2d 3, 11 (D.D.C. 2009), *aff'd*, 2009 WL 5526780 (D.C. Cir. Dec. 30, 2009) (dismissing defamation claims relating to testimony before Senate Committee). Moreover, this privilege extends to "communications preliminary to the proceeding if the matter has some relation to the proceeding." *Webster v. Sun Co.*, 790 F.2d 157, 159 n.2 (D.C. Cir. 1986) (internal quotes omitted); *see also Valor Healthcare, Inc. v. Pinkerton*, 620 F. Supp. 2d 974, 980 (W.D. Ark. 2009) (same); *Yip v. Pagano*, 606 F. Supp. 1566, 1571 (D.N.J. 1985), *aff'd*, 782 F.2d 1033 (3d Cir. 1986) (it is not necessary that witness be subpoenaed or under oath to receive the privilege; "It would be arbitrary and illogical to require that a witness be placed under oath in order to obtain the privilege while allowing his unsworn statements, communicated to the legislature prior to its hearing, to be privileged."). Thus, no hearing or formal proceeding needs to exist at the time of the communication for the privilege to apply. *See, e.g.*, *Webster*, 790 F.2d at 159-60. The objective of the privilege is "promoting candid legislative input." *Id.* at 161 (internal quotes omitted).

Tatiana's Congressional testimony, both written and verbal, clearly falls within the privilege. The testimony was unquestionably "related to the congressional proceeding" (*Banks*, 603 F. Supp. 2d at 11), because the proceeding involved Congress's consideration of the proposed bill to end forced arbitration of sexual harassment and assault claims, and Tatiana testified about her experiences relating to this subject. *See Yip*, 606 F. Supp. at 1572. Indeed, other women provided similar testimony at the same hearing, and the House Committee expressly relied on the testimony of Tatiana and these other witnesses in advancing the legislation. *Supra* at 7-8.[15]

---

[15] *See also* Report 117-234 (Jan. 28, 2022) (https://www.congress.gov/congressional-report/117th-

The Complaint's allegations on "information and belief" that Tatiana's written testimony, was "unsolicited" and/or somehow gratuitous (Comp. ¶197) is demonstrably false, and in all events irrelevant to the application of the privilege. The House Rules require the submission of written testimony, and, consistent therewith, *all* of the witnesses who testified at the hearing provided written testimony, which is part of the Congressional record. *Supra* at 7. Moreover, even if Chishti's reckless allegation that the written testimony was "unsolicited" were considered, it would not help him because the privilege applies to "communications preliminary to the proceeding," *Webster*, 790 F.2d at 159 n.2, and to voluntary statements, *Yip*, 606 F. Supp. at 1571.

For the same reason, Chishti's reliance on unspecified alleged statements made to Congress leading up to the subpoena – even if they were properly pleaded, which they are not – does not provide a basis to circumvent the privilege. As a threshold matter, the Complaint does not sufficiently allege the existence of these statements to plead a defamation claim (or any other claim). The Complaint alleges "[o]n information and belief" that "those conversations came to include discussion of Ms. Smith's proposed testimony for Ms. Spottiswoode and the substance included in it" (Comp. ¶215), but this is rank speculation. Indeed, this allegation relies on a flimsy chain of unsupported assumptions, because no facts are alleged to show that conversations took place, or that Chishti was identified in any such alleged conversations, or that any allegedly defamatory statements were conveyed. Nor do the conclusory allegations "plead the time, place, content, speaker, and listener of the alleged defamatory matter," as required to plead a defamation claim. *Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 75 (D.D.C. 2012). These unspecified pre-hearing alleged statements have not been sufficiently pleaded and are not entitled to any credit.

---

congress/house-report/234/1) (Tatiana and the other "survivors of sexual harassment or sexual assault testified about how forced arbitration clauses blocked their ability to seek justice and hold wrongdoers accountable, and shielded this misconduct from public scrutiny").

Even if they were considered, however, these alleged pre-hearing statements constitute "communications preliminary to the proceeding" that clearly are privileged. *Webster*, 790 F.2d at 159 n.2; *see also Yip*, 606 F. Supp. at 1571. Application of the privilege in these circumstances clearly serves the objectives of the privilege of "promoting candid legislative input," *Webster*, 790 F.2d at 161, because: (i) at the time these unspecified statements supposedly were made, Congress was considering the proposed legislation to end forced arbitration of sexual harassment and assault claims; (ii) Congress did in fact issue a subpoena to Tatiana and other victims; and (iii) Congress relied on their testimony for the passage of the law. *Supra* at 6-8.

Thus, based on the legislative privilege, Chishti's defamation claims should be dismissed.

### 2. The Truthfulness Of All Of The Alleged Statements Was Already Established In The Award, Which Chishti Is Barred By Collateral Estoppel From Re-Litigating

The defamation claims should also be dismissed in their entireties because Chishti is barred by the preclusive effect of the Award from pleading the required element of falsity. *See Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013).[16] The truth of the matters conveyed in all of the allegedly defamatory statements has already been adjudicated in Tatiana's favor in the Award. Properly viewed, this action is nothing more than an improper collateral attack on the Award and has been interposed long after the time to do so has expired. *See* 9 U.S.C. §12. Having selected the arbitral forum and lost, Chishti cannot now ask for a "do over."

A motion to dismiss a defamation claim should be granted where, as here, the plaintiff is barred by collateral estoppel from alleging the falsity of the statements at issue. *See Alexander v. Wash. Gas Light Co.*, 481 F. Supp. 2d 16, 35-36 (D.D.C. 2006); *Elliott v. Fed. Deposit Ins. Corp.*,

---

[16] "In determining whether factual statements in an allegedly defamatory communication are substantially true, [the court] discount[s] minor inaccuracies so long as the substance, the gist, the sting, of the libelous charge be justified." *Armstrong*, 80 A.D.3d at 183 (internal quotes omitted).

305 F. Supp. 2d 79, 84 n.2 (D.D.C. 2004); *see also Mitchell v. U.S.*, 2007 WL 148781, at *2 n.2 (D.D.C. Jan. 16, 2007). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). This salutary doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.* The law is well-settled that collateral estoppel applies to arbitration awards. *See Sanders v. Wash. Metro. Area Transit Auth.*, 819 F.2d 1151, 1157 (D.C. Cir. 1987); *Camp v. Kollen*, 567 F. Supp. 2d 170, 174 (D.D.C. 2008); *Hammand v. Lewis*, 638 F. Supp. 2d 70, 74 (D.D.C. 2009); *Walker v FedEx Office & Print Servs.*, 123 A.3d 160, 164 (D.C. 2015).

Here, the Award gives rise to collateral estoppel. Chishti and Tatiana were both parties to the arbitration (as was Afiniti). The Complaint acknowledges that arbitration was Chishti and Afiniti's chosen forum. Comp. ¶111. The arbitrator considered the parties' respective evidence, including credibility determinations regarding the testimony of Tatiana and Chishti, "as well as the entire timeline of Mr. Chishti and Ms. Spottiswoode's relationship, to get a full picture of what happened here." Award at 13. Following a multi-week hearing, the arbitrator issued a 27-page final Award, detailing his factual and legal findings and conclusions. Neither Chishti nor Afiniti ever moved to vacate the Award (indeed, they paid it), and it remains final and binding.

The collateral estoppel effect of the Award precludes Chishti's defamation claims. The Award speaks for itself, and shows that each of the statements that Chishti relies on to establish his defamation claims is supported by the findings therein, and thus truthful as a matter of law. The arbitrator made extensive findings against Chishti (*see supra* at 4-6), including, by way of example, among many others:

- Chishti "conceded that he became sexually interested in [Tatiana] as soon as they met when she was twelve or thirteen." Award at 3.

- Chishti knew that "indulging in alcohol and drugs was a necessary accompaniment if the sex he desired was to be had." *Id.* at 4.

- "[D]uring the course of her tenure with Afiniti US, Ms. Spottiswoode was subjected to an unrelenting onslaught of sexual overtures from Mr. Chishti, her CEO." *Id.* at 5. "Nearly every time he met or expected to meet with Ms. Spottiswoode, he made sexual overtures. Determined to assert power and dominion over her, he simply would not accept no for an answer." *Id.* at 14-15. Chishti's "conduct throughout [Tatiana's] employment with Afiniti appears characterized not by love, but by a need for conquest and dominion over her." *Id.* at 3.

- Chishti "was accused by another young female co-worker during the same time period he was making sexual advances toward Ms. Spottiswoode, of behavior remarkably similar to some of the sexual advances aimed at Ms. Spottiswoode." *Id.* at 3.

- During business trips, in front of colleagues, Chishti inappropriately touched Tatiana and called her "a total bitch." *Id.* at 5-6.

- On the night of September 15-16, 2017 during the trip to Brazil, Chishti inflicted on Tatiana "a serious beating evidenced by blunt force trauma, involving 'a great deal of force and aggression, with apparent anger,'" and "this beating was far more serious than any of the prior rough sex." *Id.* at 8. "[H]er consent to sex, to the extent she could conceivably legally consent in her inebriated and drugged condition, is not consent to the physical beating he gave her that went far beyond any rough sex involved in prior encounters. Ms. Spottiswoode told him repeatedly that he was hurting her and she wanted him to stop. He ignored her protestations." *Id.* at 19. "Mr. Chishti intended to injure Ms. Spottiswoode and acted with a willful and knowing disregard for her rights and safety." *Id.* at 22.

- "Mr. Chishti's sexual advances were not welcomed by Ms. Spottiswoode. Indeed, she told him on numerous occasions that she wanted a professional not a sexual relationship. *Id.* at 13-14.

These and many other findings in the Award give rise to collateral estoppel in this action.

Chishti cannot show that any of the statements on which he relies for his defamation claims was

false, and thus these claims should be dismissed in their entireties.

### 3.  The Comment To The Telegraph Is A Non-Actionable Statement Of Opinion And/Or Privileged Comment On Matters Of Public Interest

In addition to being truthful statements, Tatiana's short comment to the Telegraph

published in a single article the night of November 18, 2021 (Comp. Ex. D1) – following the

Congressional hearing and after Chishti had already resigned his positions at Afiniti and TRG –

does not support a defamation claim for the independent reasons that it is: (i) non-actionable

opinion; and/or (ii) privileged comment on matters of public interest.

As held in *Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 50 (D.C. 1983), a defamation claim

is properly dismissed based on the opinion/public interest nature of the statement because:

> In this area, perhaps more than any other, the early sifting of groundless allegations
> from meritorious claims made possible by a Rule 12(b)(6) motion is an altogether
> appropriate and necessary judicial function. At the threshold it is the court, not the
> jury, that must vigilantly stand guard against even the slight encroachments on the
> fundamental constitutional right of all citizens to speak out on public issues without
> fear of reprisal.

For reasons discussed below, these First Amendment concerns are particularly compelling

here when viewed in the context of the Congressional testimony, the #metoo movement, and the

public debate over forced arbitration in the workplace that erupted after powerful individuals were

accused of sexual harassment and assault.

"Expressions of opinion are entitled to constitutional protection unless they imply the

existence of undisclosed defamatory facts as the basis of the opinion." *Id.* at 47; *see also*

*Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996). In determining whether a statement is

opinion or fact, "the court must consider whether the allegedly defamatory words are susceptible

to proof of their truth or falsity," and "[s]tatements that cannot readily be proven true or false are,

of course, more likely to be viewed as statements of opinion, not fact." *Myers*, 472 A.2d at 47.

Moreover, "the court must consider the context in which the document containing the allegedly

defamatory reference is published," recognizing that "in the course of legitimate debate over issues

of public importance, offensive rhetoric on the borderline between fact and opinion is to be

expected, and such statements are much more deserving of constitutional protection than similar

statements made for purely private motives." *Id.*; *see also Coles v. Wash. Free Weekly, Inc.*, 881

F. Supp. 26, 32 (D.D.C. 1995) ("a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection" (internal quotes omitted)).

The law also recognizes a privilege for fair comment on matters of public interest, which "applies where the reader is aware of the factual foundation for a comment and can therefore judge independently whether the comment is reasonable." *Lane v. Random House*, 985 F. Supp. 141, 150 (D.D.C. 1995). "The privilege afford[s] legal immunity for the honest expression of opinion on matters of legitimate public interest when based upon a true or privileged statement of fact." *Coles*, 881 F. Supp. at 32 (internal quotes omitted). "[T]he fair comment privilege can be invoked even if the underlying facts are not included with the comment." *Lane*, 985 F. Supp. at 150.

Tatiana's comment to the Telegraph falls squarely within the opinion and/or fair comment doctrines. Initially, the foundation for the comment – the Congressional testimony – was disclosed in the article, publicly available, and broadly disseminated. And, as set forth in Part A above, that testimony is privileged. Tatiana's comment to the Telegraph did not go beyond, and was consistent with, her privileged testimony. As such, readers of the Telegraph article had access to, and were expressly directed to, the privileged foundation for the quotes in the article, and could "therefore judge independently whether the comment is reasonable." *Lane*, 985 F. Supp. at 150.

Moreover, the context of the article further confirms the opinion/fair comment nature of the statements, because the Telegraph presented views on both sides of the subject, and Tatiana's comment was issued only after Chishti/Afiniti publicly attacked her credibility following her testimony under oath. *Supra* at 8-9. Chishti and his colleagues at Afiniti engaged in a public charade, pretending that the Award never happened. Responding to and/or disagreeing with their attacks is fair public debate, not defamation. Indeed, Tatiana's response to the Telegraph was

24

innocuous and rather muted under the circumstances. In all events, the readers of the Telegraph had access to the referenced Congressional testimony to evaluate the comment and draw their own conclusions.

There is also no question that the article, and the comment therein, addressed "matters of legitimate public interest," *Coles*, 881 F. Supp. at 32, particularly in light of the Congressional hearing and pending legislation, and Afiniti's high-profile directors and executives. The Telegraph reported that former UK prime minister Cameron and former U.S. Joint Chiefs Chairman Mullen resigned from their positions at Afiniti, along with other high-profile former board members. Comp. Exs. D1 and C. This fallout occurred only *after* Afiniti initially publicly tried to discredit Tatiana, defend Chishti, and retain him in his leadership roles and therefore was centrally relevant to the substance of the Congressional hearing and ongoing public discourse about big companies and their powerful executives trying to cover up allegations of sexual harassment and bully, humiliate, and discredit victims.

Tatiana's comment to the Telegraph clearly constituted opinion and/or fair comment on these public issues and events, and was premised on the privileged Congressional testimony to which readers had access. In particular, Tatiana is quoted as stating:

> "Afiniti should 'immediately release all employees from any NDAs or other confidentiality clauses' preventing them from speaking out, and 'release all employees and former employees from forced arbitration'"; and

> "Everyone involved in the misogynist culture at Afiniti – there are quite a few – should be held accountable. Everyone who enabled it should be held accountable. As long as they still have forced arbitration, we can assume that this behaviour is ongoing." Comp. Ex. D1

As a preliminary matter, this comment is directed at *Afiniti*, not *Chishti*, and Afiniti has never claimed that it was improper (the Complaint does not allege otherwise). Thus, this comment does not satisfy the element of a defamation claim that the statement be "of and concerning" the

plaintiff. *Luhn v. Scott*, 2019 WL 5810309, at *4 (D.D.C. Nov. 7, 2019), *aff'd*, 843 F. App'x 326 (D.C. Cir. 2021).

Moreover, this comment about what "should" happen and the potential effects of forced arbitration is not a statement of fact that "can readily be proven true or false," and thus constitutes opinion. *Myers*, 472 A.2d at 48; *see also Armstrong*, 80 A.3d at 188 (statements that former co-worker was investigated by his employer for "'serious issues of misconduct, integrity violations and unethical behavior'" all "reflected one person's subjective view of the underling conduct and were not verifiable as true or false"). Tatiana urged support for the very matter under consideration by Congress about which she testified – namely, (i) seeking an end to forced arbitration in the workplace that has the effect of silencing victims and perpetuating misconduct, and (ii) fostering a culture of corporate change/accountability. This is a classic example of public advocacy that is protected by the First Amendment.

The only other quote attributable to Tatiana – "On a personal level, the board should insist that Afiniti and Chishti pay my father for the stock they seized and for his attorneys fees and dismiss the retaliatory arbitration they filed to scare and punish me" (Comp. Ex. D1) – constituted Tatiana's personal opinion about the then-pending arbitration against her father (and the motivation therefor). Such a statement about pending litigation is not an assertion of fact that can be proven "true" or "false," but rather an expression of opinion or hope and, as such, is not defamatory. *See Catalanello v. Kramer*, 18 F. Supp. 3d 504, 518 (S.D.N.Y. 2014) ("statements as to [plaintiff's] state of mind are not, by their nature, specific factual assertions that could be proven true or false" (internal quotes omitted)); *Aifang Shi v. Cent. Ariz. Coll.*, 2008 WL 11395569, at *14 (D. Ariz. Dec. 3, 2008), *aff'd*, 399 F. App'x 254 (9th Cir. 2010) (same).

Moreover, far from constituting a gratuitous comment unrelated to matters raised in her

Congressional testimony, Tatiana had already publicly testified about the retaliatory arbitration against her father as a further example of how secret arbitration was being used for improper purposes. Specifically, she testified:

> Nine months later, the day before my deposition, to punish and scare me, he sued my father, who had quit the day I returned from Brazil, in secret arbitration.

> In May 2019, the arbitrator in my case ruled that I had been sexually harassed and assaulted by Chishti. Since then, Chishti's lawyers at Morgan Lewis have tried to get me to vacate my arbitration award. In exchange for erasing the arbitrator's ruling, they offered to (1) let me keep the money awarded; (2) drop the claim against my father; and (3) give my father $1,000,000. They sued my father – and then offered to give him $1 million if I erased the ruling – probably so Afiniti and Chishti could hide it from his future victims and from potential shareholders if the company goes public.

*Id.* Ex. B1. Thus, when Tatiana opined to the Telegraph about the motivation behind the arbitration against her father, it was fully consistent with her testimony, and readers had access to her privileged testimony and could thus evaluate for themselves the basis for Tatiana's opinion.[17]

Accordingly, even if Chishti could somehow get past collateral estoppel as having established the truth of the statements, which he cannot, his defamation claim based on the comment to the Telegraph should be dismissed because, among other things, it constituted non-actionable opinion and/or fair comment on matters of public interest.[18]

---

[17] Chishti's defamation claim premised on the comment to the Telegraph should also be dismissed because Chishti was libel-proof by the time the Telegraph article appeared. "Under judicially created doctrine, a plaintiff may be deemed 'libel-proof' as a matter of law when his reputation is so diminished at the time of publication of the allegedly defamatory material that only nominal damages at most could be awarded because the person's reputation was not capable of sustaining further harm." *Carpenter v. King*, 792 F. Supp. 2d 29, 34 n.2 (D.D.C. 2011) (internal quotes omitted); *see also Logan v. Dist. of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978). Chishti has not alleged, and cannot plausibly allege, that the brief and innocuous comment to the Telegraph could have caused any "harm" to his already-tarnished reputation.

[18] For all of the same reasons, the comments by co-defendant Nancy Smith similarly do not provide a basis for a defamation claim, and her motion to dismiss is incorporated by reference herein.

### B.        Abuse Of Process (Fourth Cause of Action)

Chishti's Fourth Cause of Action for abuse of process, which is premised on Tatiana's Congressional testimony (*see* Comp. ¶¶223-28), should be dismissed because: (i) the statements to Congress are privileged; (ii) this claim is inapplicable to the circumstances here (*i.e.*, a Congressional subpoena issued to Tatiana); and (iii) in all events, Chishti has failed to plead either of the two elements.

Abuse of process occurs "when there is a perversion of the judicial process and achievement of some end not anticipated in the regular prosecution of the charge." *Lemon v. Kramer*, 270 F. Supp. 3d 125, 143 (D.C. 2017) (internal quotes omitted). A plaintiff "must establish two essential elements (1) the existence of an ulterior motive; and (2) an *act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp. v. Dist. of Columbia*, 319 F. Supp. 3d 1, 22 (D.D.C. 2018), *aff'd*, 788 F. App'x 8 (D.C. Cir. 2019) (emphasis in original, internal quotes and ellipses omitted). This "tort evolved as a 'catch-all' category to cover improper uses of the *judicial* machinery." *Id.* (emphasis in original, internal quotes omitted); *see also McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984) ("The essence of the tort . . . lies in the misuse of *judicial* proceedings." (emphasis in original)).

Initially, as set forth in Part A.1 above, all of the alleged statements to Congress are privileged, and thus cannot form the basis for this tort.  Additionally, this claim is wholly inapplicable because Chishti does not allege that he was subjected to process in any *judicial* proceedings initiated by Tatiana (or any of the other defendants). Moreover, even if this claim applied to a Congressional hearing, which it does not, Chishti still was not subjected to any process. The subpoena was issued to *Tatiana*. There is no authority allowing Chishti to state an abuse of process claim based on a Congressional subpoena issued to another person. The abuse of process claim should be dismissed for this reason alone.

28

The abuse of process claim should also be dismissed because Chishti has failed to plead either of the two required elements. With respect to the motive requirement, "the fact that a person acts spitefully, maliciously, or with an ulterior motive in instituting a legal proceeding is insufficient to establish abuse of process." *Scott v. D.C.*, 101 F.3d 748, 755 (D.C. Cir. 1996). Rather, the "usual case" of abuse of process is "where there is an attempt at extortion in a manner collateral to the litigation." *Houlahan v. World Wide Ass'n of Specialty Programs & Schs.*, 677 F. Supp. 2d 195, 201 (D.D.C. 2010). Thus, in *Scott*, the Court held that allegations that police officers sought to secure the plaintiff's conviction with the "ulterior aim of covering up their own excessive force" was insufficient. *Scott*, 101 F.3d at 755, 756.

Chishti's motive allegations are implausible and fall far short of the extortion-type motive that is required. Chishti alleges that "Defendants' true ulterior motives" were: "to punish [him], advance their financial interests, extricate Ms. Spottiswoode's father from litigation, and credential themselves as champions for victims of sexual harassment and assault." Comp. ¶228. The Complaint does not plausibly allege these purported "ulterior motives," however, because they run headlong into the fact that Tatiana testified pursuant to a Congressional subpoena, and thus she was complying with legal process that had been served on *her*. Other victims also testified at the same hearing, and the purpose of the hearing was to take testimony for a proposed bill to end forced arbitration. Thus, the "motive" for the "process" was Congress's consideration of proposed legislation, and Tatiana's involvement in those proceedings was pursuant to subpoena.

In any event, these motive allegations do not come close to extortion, nor even the illicit motive alleged in *Scott* that the D.C. Circuit still found to be insufficient. If Chishti's conclusory and generalized motive allegations were deemed sufficient, then any time a victim testified in court or a legislative proceeding about her perpetrator, she would be at risk of an abuse of process claim,

because the perpetrator could always claim that the victim had a motive "to punish [him]," out him as a wrongdoer, or "credential themselves as champions for victims of sexual harassment and assault." *Id*. That clearly is not the law and Chishti's "theory," if accepted, would expose witnesses before Congress to baseless claims and make it difficult for Congressional committees to obtain testimony in furtherance of their legislative objectives. Even with respect to the alleged motive to "extricate Ms. Spottiswoode's father from litigation" (*id.*), the Complaint contains no allegations of extortion or other improper conduct of the like. Tatiana's Congressional testimony constituted a discrete event, pursuant to a subpoena, as part of Congress's consideration of proposed legislation. There is no allegation that Tatiana threatened Chishti or TRG to appear before Congress if TRG did not drop the arbitration. *See Black v. Ganieva*, 2022 WL 2374514, at *20 (S.D.N.Y. June 30, 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023) ("The FAC does not allege any demands of Black for money, or any threats to Black to reveal his secrets if he did not pay money . . . . If anything, Ganieva's decision in 2021 to publicly reveal Black's misdeeds – disarming herself of these secrets – limited or terminated her capacity to extort Black by these means.").[19] And Chishti was not even a party to the litigation with Tatiana's father. It was brought by TRG. Comp. ¶13. Thus, Chishti has not alleged that defendants "sought a collateral thing which

---

[19] *Black*, albeit involving different claims, is factually analogous and supports dismissal of the claims here. Prominent hedge fund founder Leon Black asserted RICO claims against a woman (Ganieva) with whom he had a lengthy extramarital relationship, a public relations executive, and Black's former co-worker, alleging a conspiracy to "cancel" Black and extort him through Ganieva's assertion of a sexual assault lawsuit against Black and public relations campaign. Black initially had also sued Ganieva's counsel (Wigdor LLP), but dismissed it in response to an FRCP 11 motion. The Court then dismissed the complaint against all other defendants for numerous reasons, including the "conclusory, vague, indirect, clever, and cute" nature of the complaint's allegations of an agreement among the defendants (*id.* at 17), and because the allegations that the state-court lawsuit was "baseless, and refuted by texts and other recorded communications" were insufficient to plead a predicate unlawful act. *Id.* at 24. The Court held that such allegations "assail[] Ganieva and [her counsel] for conduct intrinsic to the litigation itself," but do "not allege collateral conduct abusive of the litigation process." *Id.*

[Chishti] could not legally and regularly be compelled to do." *Lemon*, 270 F. Supp. 3d at 144 (internal quotes omitted).

The abuse of process claim is deficient for the independent reason that the Complaint fails to plead the second required element: "an *act* in the use of process other than such as would be proper in the regular prosecution of the charge." *Thorp.*, 319 F. Supp. 3d at 22 (emphasis in original). "[T]here is no action for abuse of process when the process is used for the purpose for which it is intended, even if there is an incidental motive or an ulterior purpose of benefit to the defendant." *Id.* (internal quotes omitted). This element is readily disposed of, because the act at issue – providing testimony to Congress – is clearly within the proper and regular purpose of a Congressional hearing. Thus, by providing testimony, Tatiana engaged in an act that "the system legitimately offered." *Lemon*, 270 F. Supp. 3d at 144.

Chishti's remaining allegation in connection with his abuse of process claim – that "[u]pon information and belief, in or around July 2021 Defendants approached Congress in the District of Columbia with the intention of seeking a subpoena for Ms. Spottiswoode" because "[i]n Defendants' scheme, a Congressional subpoena would provide a privilege defense against claims arising from defamation and would 'trump' any confidentiality obligations of Ms. Spottiswoode to me" (Comp. ¶223) does not advance his cause. In addition to being impermissibly conclusory and implausible, such speculation actually undermines the claim. Initially, the Complaint alleges no facts to support this "information and belief" allegation. There are no allegations of who said what, to whom, or when. *See id.* ¶¶123-29. Nor is this allegation plausible. Tatiana's testimony was provided at a Congressional hearing in connection with a proposed bill that was already under consideration by Congress. It is absurd for Chishti to suggest that this legislative process involving a Congressional hearing on pending legislation and multiple witnesses, ultimately resulting in the

passage of landmark legislation, was all somehow manufactured or orchestrated by Tatiana.

Even if considered, Chishti's unfounded allegation about reaching out to Congress is also irrelevant for each of the reasons discussed above: (i) the alleged statements to Congress are privileged; (ii) a Congressional subpoena to Tatiana is not the type of judicial process to which an abuse of process claim applies; and (iii) Chishti's allegation that the purpose was to "provide a privilege defense against claims arising from defamation and would 'trump' any confidentiality obligations of Ms. Spottiswoode" (*id.* ¶223) does not allege an improper motive or act at all and actually acknowledges that Tatiana's testimony was fully protected and proper under the law.

## C.     Breach Of Contract (Fifth Through Eighth Causes of Action)

Chishti's Fifth through Eighth Causes of Action assert breach of contract claims that are all premised on a protective order entered in the arbitration. Comp. Ex. E. These claims are based on: Tatiana's Congressional testimony (Fifth Cause of Action); unspecified alleged statements to Congress in advance of the testimony (Sixth Cause of Action); unspecified alleged disclosures to Tatiana's father and his attorney (Seventh Cause of Action); and alleged failure to provide sufficient notice of the subpoena (Eighth Cause of Action). These claims should be dismissed because: (i) they, too, are barred by the legislative privilege; (ii) the Complaint fails to plausibly allege that the protective order was violated; and (iii) it also fails to plead the required element that any such hypothetical and speculative "violation" caused any damage to Chishti.

Initially, the Fifth and Sixth breach of contract claims, which are premised on the Congressional testimony and statements allegedly made to Congress in advance of that testimony, fail as a matter of law because, as set forth in Part A.1 above, those statements (both before and during the testimony) are subject to an absolute privilege. Such an absolute privilege applies not only to defamation and other tort claims, but also to breach of contract claims, particularly where, as here, immunity from liability is consistent with the purpose of the privilege. *See Rain v. Rolls-*

*Royce Corp.*, 626 F.3d 372, 377-78 (7th Cir. 2010) (absolute litigation privilege applied to breach of contract claims); *Kelly v. Golden*, 352 F.3d 344, 350 (8th Cir. 2003) (same). Here, the purpose of the legislative privilege – "promoting candid legislative input" (*supra* at 18) – is squarely implicated by Tatiana's testimony. *See supra* at 7-8. The law does not allow Chishti to circumvent the absolute legislative privilege by contriving a putative breach of contract claim. The Court need go no farther to dismiss the Fifth and Sixth Causes of Action.

The Fifth Cause of Action, premised on Tatiana's Congressional testimony, should also be dismissed for the independent reason that the protective order itself authorizes disclosure "in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction." Comp. Ex. E at ¶8. Tacitly recognizing that the protective order authorized the testimony, Chishti tries to manufacture a claim for breach by alleging that "Ms. Smith disclosed confidential information from Ms. Spottiswoode's arbitration in Ms. Spottiswoode's written 'proposed testimony' before Ms. Spottiswoode's subpoena was in effect." Comp. ¶237. This sham allegation is directly contradicted by the Complaint itself and matters of public record. As the Complaint alleges, Congress served the subpoena on Tatiana on November 12, 2021 (*id.* ¶130), and the written testimony was provided only thereafter on November 15, 2021 (*id.* ¶141). Moreover, as discussed above, written testimony is required in response to a House Committee subpoena, and *all* of the witnesses provided written testimony. *Supra* at 7. As such, the written testimony, like the verbal testimony, was clearly provided "in response to a lawful subpoena" and was authorized by the protective order. Comp. Ex. E at ¶8.

The breach of contract claims pertaining to unspecified alleged pre-testimony statements to Congress (Sixth Cause of Action) and unspecified alleged statements to Tatiana's father and his lawyer (Seventh Cause of Action) also should be dismissed because the Complaint fails to

plausibly allege (i) any breach of the protective order, particularly given its express limitations; or (ii) damages. Contrary to the Complaint's suggestions, the protective order is limited to materials "produced or generated in this Arbitration," defined in the protective order as "Confidential Material." Comp. Ex. E at ¶2. The protective order expressly excluded from any confidentiality obligation, among other things, information that was already known to or available to a party. *Id.*; *see also id.* at ¶12 ("Nothing contained in this Protective Order shall be construed to prevent a Party from disclosing its own Discovery Material to any person or from using it for any purpose.").

Moreover, the Complaint contains yet another glaring, and seriously misleading omission, of which the Court can and should take judicial notice: in an Order, dated May 9, 2018, the arbitrator expressly ruled that "Ms. Spottiswoode may speak with her father and other immediate family members about anything related to this case," finding that it would be "unconscionable" to conclude otherwise. Spottiswoode Dec. Ex. 1. Accordingly, Tatiana was not subject to any restriction on disclosures to her father.

Particularly given the foregoing limitations, the Complaint's vague and conclusory allegations do not plausibly allege that Tatiana made any disclosures in violation of the protective order. The Complaint relies only on rank speculation. For example, with respect to the Seventh Cause of Action premised on purported disclosures to Tatiana's father and his lawyer (co-defendant Edward Johnson), initially, there can be no claim based on alleged disclosures to Tatiana's father (or his lawyer) given the arbitrator's May 9, 2018 order authorizing same. Spottiswoode Dec. Ex. 1. Even putting that aside, no facts are alleged to show that any Confidential Material within the meaning of the protective order was disclosed. Again, the Complaint is devoid of allegations of what was purportedly said, by whom, and when. The Complaint's conclusory allegation that the purported disclosures involved "[t]hat the arbitration with Ms. Spottiswoode

had concluded" and "[t]hat it had resulted in an award to one of the parties" (Comp. ¶252), even if considered, actually undermines Chishti's claim because neither of these matters constitutes Confidential Material under the protective order. Nor are any facts alleged to plausibly support the speculative allegation that Tatiana made any improper disclosure of "the details of that award and the decision supporting it" (*id.*), let alone to anybody to whom disclosure was not authorized.

Additionally, Chishti has failed to allege the required element of damages caused from any such unspecified purported disclosure, which is an independent basis to dismiss the claim. *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 275 (D.D.C. 2012). Chishti alleges that the purported disclosure "precluded a fair and rapid adjudication or settlement of Mr. Spottiswoode's arbitration, causing harm to [TRG] where I was a substantial shareholder." Comp. ¶253. This is precisely the type of "mere speculative or hypothetical injury" that is insufficient to state a breach of contract claim. *Alston v. Flagstar Bank F.S.B.*, 2014 WL 12803918, *2 (D.D.C. Apr. 10, 2014). Chishti was not a party to the arbitration between James Spottiswoode and TRG; TRG settled that arbitration; and it would be entirely hypothetical and speculative for Chishti to suggest that the result of that arbitration would have been any different but for unspecified alleged disclosures made by Tatiana about *her separate arbitration* (to which James Spottiswoode and TRG were not parties), let alone to make the even further hypothetical leap of attempting to establish any impact on Chishti as a shareholder of TRG.

Finally, the Eighth Cause of Action, asserting a breach of the protective order's notice provision, fails as a matter of law based on the Complaint's own allegations. The provision provides for written notice of the subpoena "as soon as reasonably possible." Comp. Ex. E at ¶8. As the Complaint alleges, Congress served the subpoena on Friday, November 12, 2021 (Comp. ¶130), and notice was provided to Chishti on Monday, November 15, 2021 (*id.* ¶133). Providing

notice the next business day is reasonable as a matter of law.

In all events, Chishti does not and cannot plausibly allege that he incurred any damage by receiving notice of the subpoena on November 15, 2021 instead of November 12, 2021 (or even any earlier date). The Complaint merely makes the fanciful and speculative allegation that "[t]he lack of notice that [Chishti] received of the subpoena and of Ms. Spottiswoode's intent to disclose confidential information denied [Chishti] a reasonable opportunity to contact Congress to attempt to prevent disclosure of confidential information or to provide evidence countering Ms. Spottiswoode's narrative." Comp. ¶134. Chishti had no basis "to attempt to prevent disclosure of confidential information," because Tatiana's testimony was absolutely privileged. *See supra* Part A.1. Nor did Chishti have any open-ended or absolute right to "provide evidence countering Ms. Spottiswoode's narrative" given that he already had that opportunity during the forced arbitration of Tatiana's claims and the arbitrator considered all of the evidence and ruled in Tatiana's favor.

Moreover, the Complaint alleges no basis to believe that if Chishti had received notice of the subpoena any earlier, Congress would have become more receptive to his provision of any such "evidence," let alone that his provision of such "evidence" would somehow have salvaged his reputation, notwithstanding the Award against him (and the arbitrator's findings that he is not credible). The hearing was about the effects of forced arbitration on victims. It was not a forum for adjudged harassers to relitigate arbitration findings. At the hearing, Congress did not take testimony or evidence from *any* of the perpetrators who were the subjects of the victims' testimony. Chishti does not explain why he believes he would have been given special treatment – *let alone after he was already found liable in arbitration*. In fact, the Complaint expressly undermines any suggestion that it would have made any difference if Chishti had received notice of the subpoena any earlier. The Complaint acknowledges that Congress told Chishti that "they would not consider

– let alone solicit, as natural justice would demand – evidence, explanation, or testimony from [Chishti] that would refute Ms. Spottiswoode's claims or even clarify the staff's understanding"; and "[t]hey stated that they had no interest in [Chishti's] side of the story." Comp. ¶137. These allegations reveal that Chishti's true gripe is with Congress and the legislative process. But they do not plausibly allege that Chishti incurred any cognizable damage as a consequence of being notified of the subpoena on November 15 instead of November 12 – even if providing notice the next business day was somehow untimely, which it was not.

Accordingly, Chishti's Fifth through Eighth Causes of Action should be dismissed.

### D.      Tortious Interference (Eleventh Cause of Action)

In his Eleventh Cause of Action, Chishti asserts an ill-defined theory that could be construed as an attempt at either a claim for tortious interference with prospective business relationships or a claim for tortious interference with contract. Chishti pleads that he was "forced to resign" from TRG and Afiniti as a result of Tatiana and Nancy "repeat[ing] and amplif[ying] Ms. Spottiswoode's Congressional testimony and us[ing] it to bring pressure to bear on the clients of Afiniti and on clients of Ibex, a portfolio company of [TRG], to sever their contractual relationships if Afiniti or [TRG] maintained a contractual employment relationship with [Chishti]." *Id.* at ¶¶286-87. The Complaint fails to state either claim for multiple reasons.

A claim for tortious interference with a contract or business relationship requires: "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Easaw v. Newport*, 2018 WL 4964500, at *4 (D.D.C. Oct. 15, 2018); *see also Havilah Real Prop. Servs. v. VLK, LLC*, 108 A.3d 334, 345-46 (D.C. 2015).

Regardless of how he may attempt to label the claim, Chishti's tortious interference claim fails for the threshold reason that there can be no liability for tortious interference where "the

defendant shows that his or her conduct was justified or privileged." *Precision Contracting Solutions, LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 122 (D.D.C. 2019) (internal quotes omitted); *see also Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 44 (D.D.C. 2005). Here, as set forth in Part A above: (i) Tatiana's Congressional testimony was entirely privileged, as well as being truthful as a matter of law based on the collateral estoppel effect of the Award; and (ii) her subsequent generalized comment to the Telegraph was also truthful and privileged advocacy and opinion that is protected by the First Amendment. Chishti cannot obscure these defects in his defamation claim simply by recasting it as a tortious interference claim. *See William Loveland Coll. v. Distance Educ. Accreditation Comm'n*, 347 F. Supp. 3d 1, 23 (D.D.C. 2018), *aff'd*, 788 F. App'x 5 (D.C. Cir. 2019) ("because the allegations in this [tortious interference] count are based entirely on [defendant's] publication of the Show Cause Directive, it must be dismissed since the [plaintiff] cannot state a claim based on that privileged communication"). Because all of the underlying statements on which Chishti premises his tortious interference claim were justified and/or privileged, the Eleventh Cause of Action should be dismissed for this reason alone, and the Court need go no farther.

The tortious interference claim (however it is characterized) also fails at the threshold because the Complaint fails to plead the requirement of proximate causation. *See William Loveland Coll.*, 347 F. Supp. 3d at 23; *see also Doe v. Lee*, 2020 WL 759177, at *9 (D.D.C. Feb. 14, 2020). In fact, the Complaint and its exhibits actually negate causation. Chishti alleges that Tatiana "repeated and amplified [her] Congressional testimony," and "[a]s a result, given public and client outrage, to avoid business collapse [Chishti] was forced to resign." Comp. ¶¶ 286-87. However, Chishti *had already resigned before the Telegraph article was published. See* Comp. Ex. D1. Thus, any statements by Tatiana (or Nancy) following the privileged Congressional testimony could not

38

have been the proximate cause of Chishti's resignations that had already occurred.

Furthermore, Chishti has not alleged, and cannot plausibly allege, that the brief, generalized comment to the Telegraph proximately caused his alleged reputational/business damage given the substance of the Congressional testimony that was already public, widely reported, and widely viewed. The very articles on which the Complaint relies show that the information that came to light during the *Congressional testimony* resulted in the resignations of Afiniti's high-profile directors and executives, "customers and investors putting pressure on the company," and Chishti's resignation. *See* Comp. Ex. D1. Tatiana's brief and restrained comment to the Telegraph added nothing new and was made only thereafter. The Complaint contains no allegations to show that this comment had any material impact on Chishti's already decimated reputation and merely underscores Chishti's misogynistic and delusional belief that he should have and would have remained employed after the arbitrator found that he had sexually harassed and assaulted a female subordinate and was not credible in his attempts to avoid responsibility.[20]

Even if Chishti could overcome these threshold defects, which he cannot, the Eleventh Cause of Action should also be dismissed because the Complaint fails to plead the elements of a tortious interference claim. To the extent Chishti is claiming tortious interference with contract, the Complaint fails to plead the central element: a breach of contract. *See Elghannam v. Nat'l Ass'n of Boards of Pharmacy*, No. 15-CV-01554 (CRC), 2016 WL 3919806, at *4 (D.D.C. July 15, 2016), *aff'd*, 697 F. App'x 8 (D.C. Cir. 2017); *Bannum*, 383 F. Supp. 2d at 44. The only contracts in question here are Chishti's "employment contracts" with Afiniti and TRG. Comp. ¶285. But Chishti does not plead that any breach of these contracts occurred. *See Flavell v. Collier*, 2021 WL

---

[20] Chishti's allegation that he "resigned" also defeats proximate cause. Tatiana is not responsible for a voluntary decision by Chishti simply because he deemed his resignation to be in his own or the companies' best interests.

3856615, at *7 (D.D.C. Aug. 30, 2021) (plaintiff "has not adequately specified the nature of the contract and the terms that were breached"); *Econ. Research Servs. Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 229 (2016) ("[s]pecific facts about the terms of the relationships . . . are necessary to state a plausible claim"). To the contrary, he alleges that he *resigned* from these companies, which directly undermines any notion that the *employers* breached the contracts. Comp. ¶287. Given that Chishti was found in the arbitration to have, *inter alia*, sexually harassed and assaulted a subordinate (after engaging in heavy alcohol consumption and illegal drug use), and to have been the subject of similar allegations by another subordinate that the company settled, it is not plausible, and actually ludicrous, to suggest that his resignations somehow constituted a breach by Afiniti or TRG of his employment contracts.

Nor can Chishti rely on his employment relationships for a claim of tortious interference with prospective business relationship. "[A] plaintiff must allege business expectancies, not grounded on present contractual relationships, but which are commercially reasonable to expect." *Democratic State Comm. of D.C. v. Bebchick*, 706 A.2d 569, 573 (D.C. 1998). As such, Chishti's then-existing employment relationships are insufficient to support such a claim, and the Complaint does not identify any *future* business relationship that he allegedly lost, as would be required. *See Sheppard v. Dickstein, Shapiro, Morin & Oshinsky*, 59 F. Supp. 2d 27, 34 (D.D.C. 1999) (plaintiff "failed to identify any facts demonstrating any future business relations or 'expectancies' that defendants affected" where "[p]laintiff has only presented evidence that defendants may have interfered with business expectations associated with his *current* employment relationship" (emphasis added)); *see also Herron v. Fannie Mae,* 861 F.3d 160, 172 (D.C. Cir. 2017) (plaintiff's claim that she "pursued a position" with a prospective employer was "too remote to support a tortious interference claim"). The Complaint does not identify any prospective employer that

40

refused to hire Chishti following his resignations, *let alone that any such decision was because of Tatiana's comment to the Telegraph.*

The Complaint also fails to plead the element of "intentional interference," which is required under any formulation of a tortious interference claim. *See Easaw*, 2018 WL 4964500, at *4. The Complaint runs headlong into the well-settled law that "a general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability." *Soliman v. George Washington Univ.*, 658 F. Supp. 2d 98, 103-04 (D.D.C. 2009). "What is required, rather, is a 'strong showing of intent' to disrupt ongoing business relationships." *Id.*; *see also Bannum*, 383 F. Supp. 2d at 45. "[T]he requisite intent is met if behavior involves egregious conduct, such as libel, slander, physical coercion, and fraud." *Sheppard*, 59 F. Supp. 2d at 34. Here, at best, the Complaint alleges that "Ms. Spottiswoode and Ms. Smith were fully aware that this interference [*i.e.*, the post-hearing comments] would be devastating to" Chishti. Comp. ¶288. But Chishti had already resigned from his positions *before* any post-hearing comments were made by Tatiana or Nancy, and thus this conclusory allegation does not plausibly show that they had any such awareness. In all events, even if this conclusory allegation were considered, an allegation of such general "awareness" is insufficient. *See Soliman*, 658 F. Supp. 2d at 103-04 ("Her colleagues' comments may have been unwarranted in her own view, perhaps even malicious, but [plaintiff] no more than speculates that these comments were made with the specific intent to interfere with her employment."). There is no allegation that Tatiana had any contact with, let alone reached out to, Chishti's employers – or their unspecified "clients" (outside of the arbitration, where Afiniti was also a defendant). Moreover, the comment to the Telegraph does not come close to meeting the "egregious" standard – indeed, it constituted privileged and constitutionally protected advocacy that was innocuous, non-specific, and added nothing that was not already in

the public record – and, in all events, was published *after* Chishti had already resigned.

    **E.    Intentional Infliction of Emotional Distress (Thirteenth Cause of Action)**

    Chishti's Thirteenth Cause of Action for intentional infliction of emotional distress ("IIED") relies on the same allegations as his defective defamation and tortious interference claims – namely, Tatiana's Congressional testimony and Tatiana's and Nancy's subsequent comments to the Telegraph (*see* Comp. ¶¶299-302) – and it should be dismissed for similar reasons and because these actions do not come close to constituting extreme and outrageous conduct.

    To state a claim for IIED, "a plaintiff must allege (1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) caused him severe emotional distress." *Lamb v. U.S.*, 2022 WL 2966337, at *7 (D.D.C. July 26, 2022) (internal quotes and brackets omitted). "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so." *Id.* (internal quotes omitted).

    On a motion to dismiss, the Court must determine whether a plaintiff "has plausibly alleged that the [defendant's] conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (internal quotes omitted). In other words, "a plaintiff must show that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Ortberg v. Goldman Sachs Group*, 64 A.3d 158, 163 (D.C. 2013) (internal quotes omitted). Courts recognize that "[t]his very demanding standard is only infrequently met." *Lamb*, 2022 WL 2966337, at *7 (internal quotes omitted). "[T]he court must consider the specific context in which the conduct took place," including "the nature of the activity at issue" and "the relationship between the parties, and the particular environment in which the conduct took place." *Ortberg*, 64 A.3d at 163 (internal quotes omitted).

For similar reasons discussed above showing that Tatiana's alleged conduct was entirely lawful, laudatory, and privileged, the matters alleged in the Complaint – *i.e.*, providing "brave" Congressional testimony in response to a subpoena regarding matters that were already adjudicated in Tatiana's favor, and thereafter providing a general and noncontroversial comment about the testimony (in response to attacks by Chishti and Afiniti) that was published *only after Chishti had already resigned his positions* – do not remotely meet the strict test for "extreme and outrageous conduct." *See Ortberg*, 64 A.3d at 163-64 (conduct that "took place on public streets" and that was part of "life in a society that recognizes a right to public political protest" was not extreme and outrageous). Indeed, under any plausible reading of the Complaint's allegations, "an average member of the community" would not have "resentment" against Tatiana or deem *her* conduct "Outrageous!" (*Ortberg*, 64 A.3d at 163), but rather would view her, as members of Congress viewed her, as a brave advocate for legal change. *See supra* at 8.

### F.    Conspiracy (Fourteenth And Fifteenth Causes Of Action)

Leaving no claim (regardless of how spurious) off the table, Chishti has conjured up two "conspiracy" theories, but these claims, too, should be dismissed.

First, "civil conspiracy is not actionable in and of itself." *Naegele v. Albers*, 110 F. Supp. 3d 126, 156 (D.D.C. 2015) (internal quotes omitted). A conspiracy claim must be supported by an underlying tort. *See id.*; *Hill v. Medlantic Health Care Group*, 933 A.2d 314, 334 (D.C. 2007); *Levi v. Brown & Williamson Tobacco Corp.*, 528 F. App'x 4 (D.C. Cir. 2013). For all of the reasons discussed above (as well as in the co-defendants' motions), Chishti has failed to plead any viable tort (or contractual) claim, and thus the conspiracy claims fail as a matter of law.[21]

---

[21] The alleged "conspiracy" among Tatiana and her own lawyers (whether Nancy and/or Mr. Zweig) is also frivolous under the intracorporate conspiracy doctrine, which precludes a conspiracy claim as between a client and her own counsel. *See In re Ellipso, Inc.*, 2011 WL 482726, at *22 (D.C. Bankr. Feb. 7, 2011).

Second, the Complaint also fails to even allege the basic elements of a conspiracy claim, which are: "(1) an agreement between two or more persons (2) to participate in an unlawful act, and (3) injury caused by an unlawful overt act performed by one of the parties to the agreement, and in furtherance of the common scheme." *Hill*, 933 A.2d at 334. With respect to the Fourteenth Cause of Action, providing testimony in response to a Congressional subpoena and making a constitutionally protected public comment about matters that were already adjudicated in Tatiana's favor (and were already in the public record), and doing so with the assistance of counsel (*i.e.* Nancy), does not constitute an unlawful civil conspiracy. Nor has Chishti alleged any facts that could plausibly suggest that the other alleged "co-conspirators" on this claim – Tatiana's father and his lawyer – had any involvement whatsoever in, or even prior knowledge of, Tatiana's Congressional testimony or the subsequent comment, let alone entered into an agreement to do anything unlawful. *See 3M Co. v. Boulter*, 842 F. Supp. 2d 85, 119 (D.D.C. 2012) (dismissing conspiracy claim where plaintiff failed to plausibly allege "an agreement between Davis and the other Defendants to commit an unlawful act"); *see also Black*, 2022 WL 2374514, at *14 ("These nebulous and overtly conjectural allegations do not come close to knitting [defendants] together in any solid or coherent way in concerted acts toward a common end.").

The Fifteenth Cause of Action seeks to add co-defendant Zweig, one of the lawyers who successfully represented Tatiana in the arbitration, by alleging that the defendants "conspired" to violate the protective order, which purportedly "resulted in an inability of [TRG] to promptly conclude Mr. Spottiswoode's arbitration on just terms" and "resulted in Mr. Spottiswoode settling his arbitration with [TRG] with [TRG] paying him substantial amounts of money." Comp. ¶¶320-21. Initially, there is no cognizable claim for conspiracy to breach a contract. *Metro D.C. Paving, Highway & Constr. Materials Council AFLCIO v. Roubin & Janeiro, Inc.*, 1981 WL 2392, at *3

(D.D.C. May 26, 1981). In all events, no violation of the protective order's limited scope is alleged (*see* Part C *supra*) – let alone any facts to plausibly show an *agreement* to violate the protective order. Moreover, if Chishti believes TRG should not have settled and that the settlement "financially harmed" him as "the largest individual shareholder" of that company (Comp. ¶322), his claim may lie against *TRG*, but this attenuated theory does not state a conspiracy claim against any of the defendants in this case, nor a cognizable "injury" to Chishti.[22] *See also supra* at 35.

## CONCLUSION

The Court should dismiss the Complaint in its entirety as against Tatiana: (i) for lack of personal jurisdiction; or (ii) with prejudice, and without leave to replead, for failure to state a claim.

---

[22] The Complaint acknowledges that Chishti is already involved in litigation with TRG, which, "[i]n October 2022, citing Defendants' allegations of sexual assault . . . filed litigation in the Sindh High Court in Karachi attempting to bar [Chishti] from exercising [his] rights as a shareholder, and successfully received an interim Court order to that effect." Comp. ¶165. This confirms that any alleged "injury" that Chishti claims to have incurred is the result of his own improper conduct.

Dated: March 31, 2023

Respectfully submitted,

GOLENBOCK EISEMAN ASSOR BELL & PESKOE LLP

By:_____/s/Martin S. Hyman_____
         Martin S. Hyman (*Pro Hac Vice*)

Matthew C. Daly (*Pro Hac Vice*)
711 Third Avenue
New York, New York 10017
(212) 907-7300
mhyman@golenbock.com
mdaly@golenbock.com

Mark I. Bailen
(DC Bar No. 459623)
Mark I. Bailen PC
1250 Connecticut Avenue NW, Suite 700
Washington, DC 20036
(202) 656-0422
mb@bailenlaw.com

*Counsel for Defendant Tatiana Spottiswoode*